## STANDARD GALVANIZING CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10705.

United States Court of Appeals Seventh Circuit.

March 17, 1953.

Rayford W. Lemley, John E. Owens and Vincent G. Rinn, Chicago, Ill., for petitioner.

H. Brian Holland, Asst. Atty. Gen., Alonzo W. Watson, A. F. Prescott, Ellis N. Slack, Sp. Assts. to Atty. Gen., for respondent.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

The Tax Court of the United States redetermined an income tax deficiency against the Standard Galvanizing Co. of Illinois in the amount of $16,500.00 for the year 1944. The case is here on a petition to review that decision. The controversy arose over a claimed deduction for legal fees as an ordinary and necessary business expense under Section 23(a) (1) (A) of the Internal Revenue Code, 26 U.S.C.A. § 23(a) (1) (A).

The facts were stipulated and briefly are as follows. The taxpayer is an Illinois corporation, organized in 1913. Its president, from the time of its organization through the taxable year involved, was Frederick C. Brightly, Sr. In 1935 it became necessary for the company to readjust its financial affairs. A Mr. B. S. Handwork had expressed his willingness to loan the corporation funds to be used for the satisfaction of creditors and for working capital. Accordingly, a special meeting of the taxpayer's board of directors was held on November 22, 1935, and it was resolved that the company borrow money from Handwork "from time to time on the note of this corporation on such terms as the President of this corporation may see fit * * *."

A written agreement was entered into between Handwork and Brightly on the same date. It provided that Handwork would loan money to the corporation for the satisfaction of creditors, that he would purchase an outstanding real estate mortgage on the company's plant, and that he would advance funds from time to time for use as working capital. Brightly, who owned 500 of the corporation's 700 shares of outstanding capital stock, agreed to have the company execute certain mortgages, and to cause the execution of its promissory notes to cover the periodic loans for working capital. He further agreed to "cause to be transferred and delivered to" Handwork two-thirds of the outstanding capital stock of the corporation.

Pursuant to this agreement the taxpayer issued its stock certificate No. 101 for 467 shares to Handwork. The certificate stated that "B. S. Handwork is the owner of" the designated shares. This stock was transferred from that previously held by Brightly. Par value of the stock was $100.

Subsequently, loans in varying amounts were made to the taxpayer in accordance with the agreement. The loans totaled more than $40,000.00 in all. All of the loans made to the taxpayer, pursuant to this agreement, were repaid as of November 7, 1942.

In December of 1943 Handwork transferred to various assignees all but one of the 467 shares which he held under the stock certificate. In January of 1944 Handwork and his assignees brought an action in the Superior Court of Cook County, at Chicago, Illinois, against the taxpayer and its officers to compel the transfer of the stock on the taxpayer's books in accordance with the assignment. The taxpayer denied that Handwork and his assignees' were the owners of the stock, and Brightly filed a counterclaim in which he prayed for a decree that the certificate be returned to him. The court entered a decree dismissing the plaintiffs' complaint and ordering that the certificate be assigned and delivered to Brightly. The Appellate Court of Illinois subsequently reversed and remanded the cause for a new trial, which is now pending.

At a meeting of the taxpayer's shareholders, held a short time after the complaint in that action was filed, it was pointed out by T. D. Laftry, one of the taxpayer's stockholders, that the litigation arose out of the November 1935 agreement with Handwork, under which the taxpayer obtained various loans, conditioned in part upon the pledging of the stock; that the stock was pledged for the accommodation and financial benefit of the company; and that, under those circumstances, it appeared to the speaker that the company was under an obligation to indemnify the shareholders who acted at the request of and for the benefit of the company. It was thereupon resolved that the company retain legal counsel "to protect and indemnify the corporation, its officers and shareholders" in the pending litigation "to the end that the shareholders of this corporation may be returned to the same position as they were when requested by the corporation to pledge

their stock for the loan made by the corporation under said ·contract of November 22, 1935.".

In its' income tax return for the year 1944 the taxpayer claimed a deduction of $21,500.00 for legal expenses incurred and paid during that year in connection with the defense of that law suit. This was disallowed by the Commissioner with the explanation that the legal fees "did not constitute an ordinary and necessary expense of the corporation in carrying on any trade or business, under section 23(a) (1) of the Internal Revenue Code."

The Tax Court found that the Commissioner's' action in disallowing the entire amount of $21,500.00 paid in legal fees was "manifestly in error." Although the Tax Court saw no indication from the stipulated facts of an agreement to protect Brightly's interest in the stock, it said that under the facts the taxpayer did not stand "in the position of one without personal business interest in the result of the litigation and, consequently, under obligation to do no more than file a formal reply interpleading the other parties and submitting to the court the question of determining the question of ownership of the stock as between such parties."

The Tax Court pointed out that the stock was conveyed to Handwork to secure the loans desperately needed by the taxpayer; that Brightly acted as agent of the corporation with complete authority to obtain loans on whatever terms he saw fit; that his acts were in the interest of the taxpayer; and that the taxpayer's officers and stockholders were fully cognizant of the action being taken. The Tax Court then said: "Under such circumstances, we think the petitioner could reasonably anticipate that it would be faced with suit by Brightly if it took the position that it had no personal interest in the result of the litigation, and such suit might well be quite expensive, even if successfully defended." But, the Tax Court reasoned that the litigation "was due in large measure directly to the negligence of Brightly". in failing to expressly state in the agreement with Handwork that the stock would be transferred as a pledge, to be released upon repayment of the loans.

And the Tax Court then decided that the taxpayer had no obligation to protect Brightly "against the results of his own personal negligence."

The Tax Court concluded that it was proper, under such circumstances, to allocate the total legal expenses as between services rendered the taxpayer in the protection of its own interests and those rendered in fact for Brightly. Accordingly, it was held, under the rule of Cohan v. Commissioner, 2 Cir., 39 F.2d 540, that of the $21,500.00 paid in legal fees, $5,000.00 represented payment for services rendered the taxpayer and to that extent only were the fees properly deductible as an ordinary and necessary business expense.

We think the Tax Court erred as a matter of law in not allowing the entire sum of $21,500.00 as a deduction. The Tax Court apparently assumed, correctly so we think, that if the stock transaction amounted to a pledge, so that the taxpayer was legally obligated to defend the action in order to protect Brightly's interest in the stock, without question the legal fees so incurred would be deductible as an ordinary and necessary business expense. Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505. But its opinion seems to indicate that the Tax Court thought either that the conveyance was not intended as a pledge, or that, even if it were so intended, the negligence of Brightly, in not having the contract so state, was responsible for the litigation, and, in either case, the taxpayer would have no duty to litigate the issue of ownership.

We think the two conclusions on which the Tax Court based its decision were clearly erroneous. In the first place, the Tax Court concluded that there was no indication of an agreement of guaranty on the part of the taxpayer to its president. While no written or express agreement of indemnity was shown as a part of the stipulated facts, it surely cannot be denied that where, as here, the petitioner, then on the verge of bankruptcy, instructed its president to procure, as its agent, the loans necessary to save the corporation from financial disaster and the agent followed such instructions for the benefit of the tax-

payer, there was at least an implied agreement on the part of the taxpayer to save its agent from financial loss resulting from his doing what the taxpayer had instructed him to do and what the taxpayer knew he was doing.

■ In this case it became necessary for Brightly to transfer his stock to Handwork in order to secure the necessary loans for the taxpayer. All parties involved, except Handwork, apparently thought that the stock had been transferred only as additional security on the loans from Handwork. It is difficult to conceive how anyone could have thought otherwise. If the stock was transferred only as a pledge, Brightly thereby became a surety, to the extent of the value of his stock, for the taxpayer on these loans. Cross v. Allen, 141 U.S. 528, 12 S.Ct. 67, 35 L.Ed. 843. If he was a surety in this transaction and his stock had been taken as a result thereof, Brightly would have had a right to reimbursement against the taxpayer irrespective of the existence of an express contract for reimbursement. 50 Am.Jur. § 221, p. 1049, and cases there cited.

It was on this theory, we think, that the Tax Court correctly concluded that in the event the taxpayer took the position that it had no personal interest in the result of the litigation, and failed to protect Brightly, the taxpayer "could reasonably anticipate that it would be faced with suit by Brightly," and that "such suit might well be quite expensive, even if successfully defended."

After so stating what the taxpayer could reasonably have predicted if it failed to attempt to save Brightly's stock for him, the Tax Court then, out of a clear sky, reached its second erroneous conclusion, that the litigation as to the ownership of the stock was due to Brightly's negligence in failing to have the agreement clearly state that the stock was conveyed as a pledge to be returned if and when the loan was repaid. The Tax Court concluded that even if the petitioner had guaranteed Brightly against loss, it could not be said that such a guaranty covered the results of Brightly's own personal negligence.

■ This question of negligence on the part of Brightly was not even suggested in the pleadings before the Tax Court, nor was there any stipulation of facts warranting such a finding. The stipulation of facts showed only that Brightly signed the agreement which was not clear as to the pledge. But it is not shown by whom the agreement was drawn or whether it had been submitted to anyone for approval. It is only fair to assume that this agreement, executed by these two business men, was drawn, or at least approved, by attorneys representing the two corporations for which the two individuals were acting in this transaction. We do not think that the mere fact that Brightly signed the agreement furnishes a sufficient basis for saying that the litigation was caused by his negligence. If the agreement had been either drawn or approved by the attorney for the taxpayer, Brightly, a business man should not be held responsible for the failure to include in the agreement the stipulation that the stock was to be transferred only as a pledge. We may assume that had the question of negligence been raised in the pleadings before the Tax Court there would have been evidence by which the question could have been accurately determined. In the absence of such an issue in the pleadings and of evidence on the issue, it was error for the Tax Court to raise the question and then to decide solely on the evidence that Brightly signed the agreement, that the negligence, if any, was his.

■ But the taxpayer here was not required to correctly predict the holding of the Illinois courts regarding the ultimate legal effect of this transaction, as to whether the stock was actually transferred as a pledge or whether the negligence of Brightly might be considered by the courts a sufficient excuse for the taxpayer to refuse to come to his aid. As the Tax Court apparently recognized, the taxpayer had abundant reason to assume that it was legally obligated to protect Brightly's interest in the stock. Brightly had acted in the interest of the corporation and to its benefit as its agent. He had acted with the full knowledge and consent of the officers and

740

stockholders of the taxpayer. If the taxpayer had not protected Brightly's interest in his stock it had sufficient reasons for thinking that it would be sued by Brightly for any loss sustained by him; that it might lose such a law suit; and that, even if it won, the litigation "might well be quite expensive." In such a situation the taxpayer had reasonable grounds for believing that it would be in the best interests of its business to incur the necessary legal expenses to defend Brightly's interest in his stock.

We believe that the amount expended for legal fees under such circumstances constituted an ordinary and necessary business expense deductible under Section 23(a) (1) (A). It follows, therefore, that under the pleadings and evidence before the Tax Court the entire amount of $21,500.00 should have been allowed as a deduction to the taxpayer.

The decision of the Tax Court is reversed and the cause remanded with instructions to enter a decision and order in conformity with this opinion.