COMMISSIONER OF INTERNAL REVENUE *v.*
TELLIER ET UX.

No. 351. Argued January 27, 1966.—
Decided March 24, 1966.

*Jack S. Levin* argued the cause for petitioner. With
him on the brief were *Acting Solicitor General Spritzer,
Acting Assistant Attorney General Roberts* and *Robert
A. Bernstein.*

*Michael Kaminsky* argued the cause and filed a brief
for respondents.

MR. JUSTICE STEWART delivered the opinion of the Court.

The question presented in this case is whether expenses incurred by a taxpayer in the unsuccessful defense of a criminal prosecution may qualify for deduction from taxable income under § 162 (a) of the Internal Revenue Code of 1954, which allows a deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business . . . ." [1] The respondent Walter F. Tellier was engaged in the business of underwriting the public sale of stock offerings and purchasing securities for resale to customers. In 1956 he was brought to trial upon a 36-count indictment that charged him with violating the fraud section of the Securities Act of 1933 [2] and the mail fraud statute, [3] and with conspiring to violate those statutes. [4] He was found guilty on all counts and was sentenced to pay an $18,000 fine and to serve four and a half years in prison. The judgment of conviction was affirmed on appeal. [5] In his unsuccessful defense of this criminal prosecution, the respondent incurred and paid $22,964.20 in legal expenses in 1956. He claimed a deduction for that amount on his federal income tax return for that year. The Commissioner disallowed the deduction and was sustained by the Tax Court. T. C. Memo. 1963–212, 22 CCH Tax Ct. Mem. 1062. The Court of Appeals for the Second Circuit reversed in a unanimous *en banc* decision, 342 F. 2d 690, and we granted certiorari. 382

---

[1] "(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in·carrying on any trade or business . . . ." 26 U. S. C. § 162.

[2] 48 Stat. 84, §·17, as amended, 15 U. S. C. § 77q (a).

[3] 18 U. S. C. § 1341.

[4] 18 U. S. C. § 371.

[5] *United States* v. *Tellier,* 255 F. 2d 441 (C. A. 2d Cir.).

U. S. 808. We affirm the judgment of the Court of Appeals.

There can be no serious question that the payments deducted by the respondent were expenses of his securities business under the decisions of this Court, and the Commissioner does not contend otherwise. In *United States* v. *Gilmore,* 372 U. S. 39, we held that "the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was 'business' or 'personal' " within the meaning of § 162 (a). 372 U. S., at 49. Cf. *Kornhauser* v. *United States,* 276 U. S. 145, 153; *Deputy* v. *du Pont,* 308 U. S. 488, 494, 496. The criminal charges against the respondent found their source in his business activities as a securities dealer. The respondent's legal fees, paid in defense against those charges, therefore clearly qualify under *Gilmore* as "expenses paid or incurred . . . in carrying on any trade or business" within the meaning of § 162 (a).

The Commissioner also concedes that the respondent's legal expenses were "ordinary" and "necessary" expenses within the meaning of § 162 (a). Our decisions have consistently construed the term "necessary" as imposing only the minimal requirement that the expense be "appropriate and helpful" for "the development of the [taxpayer's] business." *Welch* v. *Helvering,* 290 U. S. 111, 113. Cf. *Kornhauser* v. *United States, supra,* at 152; *Lilly* v. *Commissioner,* 343 U. S. 90, 93–94; *Commissioner* v. *Heininger,* 320 U. S. 467, 471; *McCulloch* v. *Maryland,* 4 Wheat. 316, 413–415. The principal function of the term "ordinary" in § 162 (a) is to clarify the distinction, often difficult, between those expenses that are currently deductible and those that are in the nature of capital expenditures, which, if deductible at all,

must be amortized over the useful life of the asset. *Welch* v. *Helvering, supra,* at 113–116.[6] The legal expenses deducted by the respondent were not capital expenditures. They were incurred in his defense against charges of past criminal conduct, not in the acquisition of a capital asset. Our decisions establish that counsel fees comparable to those here involved are ordinary business expenses, even though a "lawsuit affecting the safety of a business may happen once in a lifetime." *Welch* v. *Helvering, supra,* at 114. *Kornhauser* v. *United States, supra,* at 152–153; cf. *Trust of Bingham* v. *Commissioner,* 325 U. S. 365, 376.[7]

It is therefore clear that the respondent's legal fees were deductible under § 162 (a) if the provisions of that section are to be given their normal effect in this case. The Commissioner and the Tax Court determined, however, that even though the expenditures meet the literal requirements of § 162 (a), their deduction must nevertheless be disallowed on the ground of public policy. That view finds considerable support in other administrative and judicial decisions.[8] It finds no support, how-

---

[6] See Griswold, An Argument Against the Doctrine that Deductions Should Be Narrowly Construed as a Matter of Legislative Grace, 56 Harv. L. Rev. 1142, 1145; Wolfman, Professors and the "Ordinary and Necessary" Business Expense, 112 U. Pa. L. Rev. 1089, 1111–1112.

[7] See Brookes, Litigation Expenses and the Income Tax, 12 Tax L. Rev. 241.

[8] See *Sarah Backer,* 1 B. T. A. 214; *Norvin R. Lindheim,* 2 B. T. A. 229; *Thomas A. Joseph,* 26 T. C. 562; *Burroughs Bldg. Material Co.* v. *Commissioner,* 47 F. 2d 178 (C. A. 2d Cir.); *Commissioner* v. *Schwartz,* 232 F. 2d 94 (C. A. 5th Cir.); *Acker* v. *Commissioner,* 258 F. 2d 568 (C. A. 6th Cir.); *Bell* v. *Commissioner,* 320 F. 2d 953 (C. A. 8th Cir.); *Peckham* v. *Commissioner,* 327 F. 2d 855, 856 (C. A. 4th Cir.); *Port* v. *United States,* 143 Ct. Cl. 334, 163 F. Supp. 645. See also Note, Business Expenses, Disallowance, and Public Policy: Some Problems of Sanctioning with the

ever, in any regulation or statute or in any decision of this Court, and we believe no such "public policy" exception to the plain provisions of § 162 (a) is warranted in the circumstances presented by this case.

We start with the proposition that the federal income tax is a tax on net income, not a sanction against wrongdoing. That principle has been firmly imbedded in the tax statute from the beginning. One familiar facet of the principle is the truism that the statute does not concern itself with the lawfulness of the income that it taxes. Income from a criminal enterprise is taxed at a rate no higher and no lower than income from more conventional sources. "[T]he fact that a business is unlawful [does not] exempt it from paying the taxes that if lawful it would have to pay." *United States* v. *Sullivan,* 274 U. S. 259, 263. See *James* v. *United States,* 366 U. S. 213.

With respect to deductions, the basic rule, with only a few limited and well-defined exceptions, is the same. During the Senate debate in 1913 on the bill that became the first modern income tax law, amendments were rejected that would have limited deductions for losses to those incurred in a "legitimate" or "lawful" trade or business. Senator Williams, who was in charge of the bill, stated on the floor of the Senate that

"[T]he object of this bill is to tax a man's net income; that is to say, what he has at the end of the year after deducting from his receipts his expenditures or losses. It is not to reform men's moral characters; that is not the object of the bill at all.

---

Internal Revenue Code, 72 Yale L. J. 108; 4 Mertens, Law of Federal Income Taxation § 25.49 ff. Compare *Longhorn Portland Cement Co.,* 3 T. C. 310; G. C. M. 24377, 1944 Cum. Bull. 93; Lamont, Controversial Aspects of Ordinary and Necessary Business Expense, 42 Taxes 808, 833–834.

> The tax is not levied for the purpose of restraining people from betting on horse races or upon 'futures,' but the tax is framed for the purpose of making a man pay upon his net income, his actual profit during the year. The law does not care where he got it from, so far as the tax is concerned, although the law may very properly care in another way." 50 Cong. Rec. 3849.[9]

The application of this principle is reflected in several decisions of this Court. As recently as *Commissioner* v. *Sullivan,* 356 U. S. 27, we sustained the allowance of a deduction for rent and wages paid by the operators of a gambling enterprise, even though both the business itself and the specific rent and wage payments there in question were illegal under state law. In rejecting the Commissioner's contention that the illegality of the enterprise required disallowance of the deduction, we held that, were we to "enforce as federal policy the rule espoused by the Commissioner in this case, we would come close to making this type of business taxable on the basis of its gross receipts, while all other business would be taxable on the basis of net income. If that choice is to be made, Congress should do it." *Id.,* at 29. In *Lilly* v. *Commissioner,* 343 U. S. 90, the Court upheld deductions claimed by opticians for amounts paid to doctors who prescribed the eyeglasses that the opticians sold, although the Court was careful to disavow "approval of the business ethics or public policy involved in the payments . . . ." 343 U. S., at 97. And in *Commissioner* v. *Heininger,* 320 U. S. 467, a case akin to the one before us, the Court upheld deductions claimed

---

[9] In challenging the amendments, Senator Williams also stated:

"In other words, you are going to count the man as having money which he has not got, because he has lost it in a way that you do not approve of." 50 Cong. Rec. 3850.

by a dentist for lawyer's fees and other expenses incurred in unsuccessfully defending against an administrative fraud order issued by the Postmaster General.

Deduction of expenses falling within the general definition of § 162 (a) may, to be sure, be disallowed by specific legislation, since deductions "are a matter of grace and Congress can, of course, disallow them as it chooses." *Commissioner* v. *Sullivan*, 356 U. S., at 28.[10] The Court has also given effect to a precise and longstanding Treasury Regulation prohibiting the deduction of a specified category of expenditures; an example is lobbying expenses, whose nondeductibility was supported by considerations not here present. *Textile Mills Corp.* v. *Commissioner*, 314 U. S. 326; *Cammarano* v. *United States*, 358 U. S. 498. But where Congress has been wholly silent, it is only in extremely limited circum-

---

[10] Specific legislation denying deductions for payments that violate public policy is not unknown. *E. g.*, Internal Revenue Code of 1954, § 162 (c) (disallowance of deduction for payments to officials and employees of foreign countries in circumstances where the payments would be illegal if federal laws were applicable; cf. Treas. Reg. § 1.162–18); § 165 (d) (deduction for wagering losses limited to extent of wagering gains). See also Stabilization Act of 1942, § 5 (a), 56 Stat. 767, 50 U. S. C. App. § 965 (a) (1946 ed.), Defense Production Act of 1950, § 405 (a), 64 Stat. 807, as amended, c. 275, § 104 (i), 65 Stat. 136 (1951), 50 U. S. C. App. § 2105 (a) (1952 ed.), and Defense Production Act of 1950, § 405 (b), 64 Stat. 807, 50 U. S. C. App. § 2105 (b) (1952 ed.) (general authority in President to prescribe extent to which payments violating price and wage regulations should be disregarded by government agencies, including the Internal Revenue Service; see Rev. Rul. 56–180, 1956–1 Cum. Bull. 94). Cf. Treas. Reg. § 1.162–1 (a), which provides that "Penalty payments with respect to Federal taxes, whether on account of negligence, delinquency, or fraud, are not deductible from gross income"; Joint Committee on Internal Revenue Taxation, Staff Study of Income Tax Treatment of Treble Damage Payments under the Antitrust Laws, Nov. 1, 1965, p. 16 (proposal that § 162 be amended to deny deductions for certain fines, penalties, treble-damage payments, bribes, and kickbacks).

stances that the Court has countenanced exceptions to the general principle reflected in the *Sullivan, Lilly* and *Heininger* decisions. Only where the allowance of a deduction would "frustrate sharply defined national or state policies proscribing particular types of conduct" have we upheld its disallowance. *Commissioner* v. *Heininger,* 320 U. S., at 473. Further, the "policies frustrated must be national or state policies evidenced by some *governmental* declaration of them." *Lilly* v. *Commissioner,* 343 U. S., at 97. (Emphasis added.) Finally, the "test of nondeductibility always is the severity and immediacy of the frustration resulting from allowance of the deduction." *Tank Truck Rentals* v. *Commissioner,* 356 U. S. 30, 35. In that case, as in *Hoover Express Co.* v. *United States,* 356 U. S. 38, we upheld the disallowance of deductions claimed by taxpayers for fines and penalties imposed upon them for violating state penal statutes; to allow a deduction in those circumstances would have directly and substantially diluted the actual punishment imposed.

The present case falls far outside that sharply limited and carefully defined category. No public policy is offended when a man faced with serious criminal charges employs a lawyer to help in his defense. That is not "proscribed conduct." It is his constitutional right. *Chandler* v. *Fretag,* 348 U. S. 3. See *Gideon* v. *Wainwright,* 372 U. S. 335. In an adversary system of criminal justice, it is a basic of our public policy that a defendant in a criminal case have counsel to represent him.

Congress has authorized the imposition of severe punishment upon those found guilty of the serious criminal offenses with which the respondent was charged and of which he was convicted. But we can find no warrant for attaching to that punishment an additional financial burden that Congress has neither expressly nor im-

plicitly directed.[11] To deny a deduction for expenses incurred in the unsuccessful defense of a criminal prosecution would impose such a burden in a measure dependent not on the seriousness of the offense or the actual sentence imposed by the court, but on the cost of the defense and the defendant's particular tax bracket. We decline to distort the income tax laws to serve a purpose for which they were neither intended nor designed by Congress.

The judgment is

*Affirmed.*

---

[11] Cf. Paul, The Use of Public Policy by the Commissioner in Disallowing Deductions, 1954 So. Calif. Tax Inst. 715, 730–731: ". . . Section 23 (a)(1)(A) [the predecessor of § 162 (a)] is not an essay in morality, designed to encourage virtue and discourage sin. It 'was not contrived as an arm of the law to enforce State criminal statutes . . . .' Nor was it contrived to implement the various regulatory statutes which Congress has from time to time enacted. The provision is more modestly concerned with 'commercial net income'—a businessman's net accretion in wealth during the taxable year after due allowance for the operating costs of the business. . . . There is no evidence in the Section of an attempt to punish taxpayers . . . when the Commissioner feels that a state or federal statute has been flouted. The statute hardly operates 'in a vacuum,' if it serves its own vital function and leaves other problems to other statutes."