CENTRAL COAT, APRON & LINEN SERVICE, INC., Plaintiff,

v.

UNITED STATES of America, Defendant (two cases).

Nos. 65 Civ. 3258, 66 Civ. 1207.

United States District Court
S. D. New York.

May 6, 1969.

Mervin C. Pollak, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, for defendant (Grant B. Hering, Asst. U. S. Atty., of counsel).

## OPINION

RYAN, District Judge.

Plaintiff moves for summary judgment in both of these actions. Jurisdiction and venue are not questioned. I find no factual issue present.

The actions were filed under Title 28 U.S.C. Section 1346(a) (1) for recovery of federal corporate income taxes. No. 65 Civil 3258 seeks a refund of taxes paid by plaintiff for the year 1960; No. 66 Civil 1207 for the year 1961. Three separate claims are alleged: one in No. 65 Civil 3258 and two in No. 66 Civil 1207. The refund claims were timely filed and followed audits of plaintiff's returns and payment of additional taxes with interest after disallowance of legal fees as a business expense and the payment of a fine as compensation or indemnification deduction.

It is of Court record that plaintiff, CENTRAL COAT, and its then President, Sam Spatt, were among the sixteen named in an indictment returned in this District on January 31, 1957, charging violations of Sections 1 and 2 of the Sherman Act, as amended, Title 15 U.S. C. Sections 1 and 2. After pleas of not guilty and a trial to the Court, all of the defendants were found guilty and sentenced on June 16, 1958. CENTRAL was fined $50,000.00 and Sam Spatt, its President, was fined $10,000.00 and sentenced to 3 months in jail. Appeals were duly filed and, while pending, defendants on November 20, 1959, moved before the Trial Court for a new trial. The motion was based primarily on the discovery after trial of 43 unnumbered

documents which, through inadvertence, had not been made available to defendants; upon denial of this motion, a further appeal was taken. The two appeals were heard together; the judgments of conviction reversed and the indictment remanded for retrial (2 Cir., 291 F.2d 563—May 31, 1961) and a rehearing denied. Later on November 30, 1961, all the defendants entered nolo contendere pleas and a fine of $50,000 was imposed on CENTRAL and of $10,000 on its president, Sam Spatt.

It is not in dispute that plaintiff CENTRAL on December 28, 1961 paid these fines and made no deduction in its 1961 corporate income tax return for these payments. On audit of this return, the District Director treated the payment of Spatt's $10,000 fine by CENTRAL as a constructive dividend taxable to Spatt in 1961 as additional personal income and not deductible by CENTRAL. This treatment was upheld on appellate review. The refund claim which plaintiff CENTRAL filed for overpayment of corporate income taxes for the year 1961 included a claim that plaintiff's payment of Spatt's $10,000 fine was not a constructive dividend to Spatt but additional executive compensation paid by plaintiff for the benefit of Spatt, and that as such compensation it should have been deducted on plaintiff's 1961 corporate return. This part of plaintiff's 1961 refund claim asked for return of income taxes overpaid in the amount of $5,200 with interest. Count Two of 66 Civil 1207 seeks recovery of this part of plaintiff's 1961 alleged overpayment.

The refund of $10,780.76 sought in No. 65 Civil 3258 arises from two payments made in 1960 by plaintiff CENTRAL to the law firm of Rosenman, Goldmark, Colin & Kaye, Esqs., for services rendered and disbursements made in prosecuting the motion made on behalf of plaintiff and Spatt for a new trial. These payments, totaling $17,795.69, were made on April 11, 1960, on April 28, 1960 and on August 12, 1960, and were deducted as a business expense by plaintiff on its 1960 federal corporate income tax return. Upon disallowance by the District Director, this resulted in an assessment of additional taxes and interest totaling $10,780.76.

On January 16, 1961, plaintiff paid the same attorneys $1,500 and $25,000 on September 15, 1961, a total of $26,500 on bills rendered by them to plaintiff for services rendered in prosecuting the two appeals. Plaintiff deducted these payments as a business expense in its corporate tax return for 1961 and on audit this deduction was disallowed. Additional taxes of $13,780 and interest of $2,406 were assessed and paid by plaintiff. Recovery of this payment of $16,186 is sought in the first count of No. 66 Civil 1207.

No claim is made that the attorneys' bills were unreasonable or that they covered any services other than those rendered in defending CENTRAL and Spatt from the anti-trust prosecution.

The only issues raised by plaintiff's motion are:

1. Whether the taxpayer under the circumstances here present may deduct payment of all legal fees incurred for defense of the corporation and of its president in a criminal prosecution for violation of the Sherman Anti-Trust Act as an ordinary and necessary business expense of the corporation.

2. Whether taxpayer, which has paid a fine imposed on its president as a result of a conviction under the Sherman Anti-Trust Act, may deduct the fine by calling it "compensation".

In Commissioner of Internal Revenue v. Tellier, 383 U.S. 687, 86 S.Ct. 1118, 16 L.Ed.2d 185 (1966), the Court held that legal expenses incurred by the taxpayer for the unsuccessful defense of a business-related criminal prosecution were deductible as ordinary and necessary business expenses under Section 162 of the Internal Revenue Code.

Shortly after *Tellier*, the Internal Revenue Service in Revenue Ruling 66–330 stated that it would allow as deduc-

tions attorneys' fees and related legal expenses paid or incurred in the unsuccessful defense of a prosecution for violation of the Sherman Anti-Trust Act, if those expenses were otherwise deductible as ordinary and necessary business expenses (1962–2 Cum.Bull. 44).

In keeping with *Tellier* and this ruling, the Government on this motion does not dispute that a portion of the fees paid by CENTRAL to the Rosenman firm is deductible by it as CENTRAL's share of those fees. Nor does the Government dispute that legal fees of Spatt in defense of his own liability under the Sherman Anti-Trust Act are deductible on his individual tax return if paid by him, as long as they are incurred in defending activities related to the business of the corporation and not to personal frolics. In short, the Government does not dispute the nature of the deduction, but the taxpayer taking it.

The present controversy arises because CENTRAL paid not only the fees incurred in its defense but those incurred in defending Spatt as well. CENTRAL contends that, as a matter of law, its entire payment is deductible without reduction of any portion allocated to Spatt for the reason that payment by a corporation of an officer's legal fees under these circumstances is an ordinary and necessary business expense of the corporation, that there is no need to allocate and that such allocation could or should not be made.

The circumstances referred to by CENTRAL to support its position are that the activities charged to be illegal arose directly from Spatt's corporate duties and were undertaken in promoting the interest of the corporation; that no separate charge was made by counsel to Spatt and that there was no expectation of payment of counsel's fees by Spatt but solely by Central; that if Spatt had engaged his own counsel, the corporation lawfully could have paid his attorney or Spatt in reimbursement; and that, in fact, there was an indemnity agreement running to Spatt for such payment—an agreement which reflects the general law which has been recognized by statutory enactment in the majority of the States and particularly by the New York Legislature in Section 723, Business Corporation Law, McKinney's Consol. Laws, c. 4.[1]

Following the reversal of the convictions and after payment of part of the counsel fees, CENTRAL adopted a general resolution to the effect that past and present directors and officers should be indemnified against all reasonable expenses, including fines and attorneys' fees in all future and pending proceedings, when such director or officer had acted in good faith and for the interests of the corporation, believing that his conduct was not unlawful. This was followed by a specific resolution indemnifying Spatt because he had acted in good faith in the civil suit then pending against him for all sums paid in judgment or settlement including reasonable expenses; and by another resolution finding that Spatt had acted in good faith in the criminal action and providing for payment of any fine assessed against him.

In support of its position that CENTRAL may not deduct more than its share of the legal fees, the Government points out that it has been held that Spatt, as an officer and director of a corporation, is engaged in a trade or business (Trent v. Commissioner of In-

1. Section 723 thereof provides in pertinent part:

(a) A corporation may indemnify any person made * * * a party to an action * * * other than one by or in the right of the corporation to procure a judgment in its favor, whether civil or criminal * * * by reason of the fact that he * * * was a director or officer of the corporation * * * against judgments, fines, amounts paid in settlement and reasonable expenses, including attorneys' fees * * * if such director or officer acted, in good faith, for a purpose which he reasonably believed to be in the best interests of the corporation and, in criminal actions or proceedings, in addition, had no reasonable cause to believe that his conduct was unlawful.

ternal Revenue, 2 Cir., 291 F.2d 669); the trade or business of corporate employment (Weddle v. C. I. R., 2 Cir., 325 F.2d 849) is separate from that of the corporation (Folker v. Johnson, 2 Cir., 230 F.2d 906); and that the legal expenses incurred in the defense of Spatt's activities as such corporate officer are business expenses deductible by him alone (Hochschild v. C. I. R., 2 Cir., 161 F.2d 817). The separability of his activities is borne out, adds the Government, by the fact that the indictment charged him individually with wrongdoing and that he was separately convicted and fined· and sentenced to imprisonment.

In aid of this argument for allocation, which raises a question of fact, the Government says that it appears from the record that Spatt's defense formed a substantial part of the legal representation in that one of the principal efforts of counsel was to get the conviction reversed because Spatt had been sentenced to imprisonment. While there is no doubt from the record before us that Spatt's jail sentence played a significant role in the retainer of counsel on the motions and the appeal, it is equally true that CENTRAL had grave reasons for upsetting its conviction, not only because of the $50,000 fine but because of the treble damage exposure (a suit for over seven million dollars had been filed against both Spatt and CENTRAL following their convictions) so that, irrespective of Spatt, CENTRAL would undoubtedly have appealed.

The fact that the same counsel was employed to represent both and that such representation benefited both, according to plaintiff, cannot serve to curtail CENTRAL's right to deduct all the fees. Moreover, it argues that the failure to allocate the fees between the corporation and its officer demonstrates the unity of their defense and the impossibility of allocating the charge for legal services.

The record does not support the argument of the Government that, in paying the attorneys' fees of Spatt, the corporation was voluntarily assuming his obligations and, therefore, cannot deduct it. The evidence is uncontradicted that the attorneys looked to the corporation alone for payment, and so billed it. In any event, even if they had billed Spatt and then been paid by the corporation, or if Spatt had paid them and been reimbursed by the corporation, the fees, we hold, would still be deductible.

The record establishes that the corporation was operated and controlled by Spatt as a single enterprise; that all his activities were directed, to and for the advancement of the corporation and no charge was made and there was no evidence that he was motivated or acted for private gain. The fact that he was individually indicted and punished under the provisions of the Sherman Act does not serve to isolate his wrong from that committed by the corporation. The fact that Spatt was found to be individually guilty does not mean that CENTRAL was any the less guilty (C. Ludwig Baumann & Co. v. Marcelle, 2 Cir., 203 F.2d 459). In fact, if we follow the Government's argument, its contention that Spatt could deduct part of these expenses as his own business expenses— which no one disputes—is to say that he was engaged in corporate business, since, being its officer, was his business. Under these facts and the further fact that Spatt paid no part of these fees, it seems that any allocation now would be purely artificial, if not fictional, and unwarranted in that Spatt would be seeking to deduct what he had not paid. The Government does not bother to explain on what theory any such deduction could be allowed Spatt for it seems obvious that, after a trial of what the Government sees as a question of fact, the Court would have to find that it was academic because Spatt had paid nothing anyway.

What really bothers the Government is that, if we hold that CENTRAL can deduct Spatt's fees, manipulation will follow in that the taxpayer with the highest bracket and the one to benefit the most, will take the deduction with a

resulting reduction in revenues, thus establishing a bad policy. The answer is that, whoever pays the expenses and has the liability to do so—assuming they meet the test of ordinary and usual business expenses under Section 162—deducts them; and that, if the officer incurs them out of his own pocket and the corporation refuses to indemnify him, they are his expenses deductible by him (Commissioner of Internal Revenue v. People's-Pittsburgh Trust Co., 3 Cir., 60 F.2d 187; William L. Butler, 17 T.C. 675), and if it does indemnify him, they are its expense and deductible by it. The ultimate question, then, is whether the expenses of defendant Spatt can be said to have been usual and ordinary business expenses of CENTRAL.

 Several factors go into making such a determination. United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L. Ed.2d 570 and United States v. Patrick, 372 U.S. 53, 83 S.Ct. 618, 9 L.Ed.2d 580, tell us that it is the origin and character of the claim with respect to which the expense has been incurred, rather than the potential consequences on the fortunes of the taxpayer, which is controlling. Under this test, the fact that Spatt individually violated the law and could suffer imprisonment is not the determining factor, but rather the fact that his violation of the law arose as a direct result of his acting as the principal officer of the corporate defendant, for whose benefit he committed the tortious acts. His vindication would be to a certain extent the vindication of the corporation since, in the small wholly owned business, a finding of guilt against Spatt compelled a finding of guilt on the part of CENTRAL, and would undoubtedly affect its business, not only by having to pay a fine but by being subjected to treble damage actions which would certainly threaten to deplete its assets. Spatt's defense can be said to have been undertaken to avoid corporate liability as well as to preserve

corporate property, and as well as to avoid his conviction. Following reversal of the two convictions as a result of counsel's efforts, the treble damage suit was discontinued.

Standard Galvanizing Co. v. Commissioner of Internal Revenue, 7 Cir., 202 F.2d 736, and Larchfield Corp. v. United States, 2 Cir., 373 F.2d 159, upheld the deductibility by the corporation of legal expenses incurred in the defense of a corporate officer charged in a stockholders' suit with wrongdoing while engaged in his official duties on behalf of the corporation. In *Standard Galvanizing,* the corporate president sued by the stockholders had interposed a counterclaim for his own benefit to recover the stock he had pledged to the plaintiff lender on a loan made to the corporation secured by the defendant's stock. Because of the litigation over the president's ownership of the stock and the absence of an indemnity contract from the corporation, the Tax Court allocated part of the counsel fees to him.[2] It held them not deductible by the corporation. On the theory that the entire action was undertaken to avoid corporate liability and because the president had acted in the interests of the corporation and with its full knowledge and consent, the District Court permitted the entire amount of counsel fees to be deducted by the corporation.

In *Larchfield,* the Court, although denying the fees and expenses of the corporation in defending a stockholders' suit on the basis that some were capital expenditures (and not deductible under Section 160) and some were business expenses (and deductible), permitted full deduction on the latter ground for counsel fees to individual defendants under an indemnification by-law. The Court there held that, although such counsel fees would not have been deductible by the officer himself because related to a capital investment, it did not follow "that the payments had the same charac-

**2.** After the suit had been filed, a resolution was passed by the stockholders to retain legal counsel and "to protect and indemnify the corporation, its officers and shareholders." 202 F.2d 737.

ter for tax purposes when made by the corporation under a pre-existing contract requiring it to indemnify him." It added that "payment of legal fees under such a by-law has been reasonably characterized as 'a fringe benefit necessary to induce officers and directors to serve, deductible in any event to the corporation as reasonable compensation.'" (373 F.2d 167) In Union Investment Co. (21 T.C. 659), the corporation was permitted to deduct all counsel fees incurred in defending its officers from a charge of corruption of State legislators because "the payments in question were proximately and directly related to the conduct of petitioner's business" (p. 662) and because of the indemnity agreement running to the officer.

Central Foundry Co., 49 T.C. 234, went so far as to permit reimbursement for both sides, management and the insurgents in a proxy fight, although the insurgents until victorious were certainly not management, because of the resulting benefit to the corporation. If a proxy fight is of sufficient benefit to justify reimbursement to all sides, it is not stretching a point to say that the benefit which resulted to CENTRAL from the reversal of Spatt's conviction justified its assumption of his fees. I do not, and the Court did not in *Standard Galvanizing* and *Larchfield*, overlook the fact that there was a contract or by-law providing for reimbursement or indemnity by the corporation to its officers or shareholders in litigation involving corporate affairs. I consider that factor of importance as evidencing a growing recognition on the part of corporations that such expenses are part of the ordinary cost of obtaining competent and diligent servants to run its business. Although, I would not have thought that the presence of such an agreement would in every case convert into a business expense an otherwise non-business expense from the mere fact that it was assumed by the corporation, it does appear from the cases cited that the Courts are inclined to give it great weight in determining whether it is deductible or not by the corporation. The Court went so far as to hold in *Larchfield* that a legal expense not deductible if taken by the individual, was deductible because taken by the corporation under pre-existing contract of indemnity.

The Government says that, even if this is so, the resolution in this case would apply only to the later payments of counsel's fees because it was not adopted until after the first payment of legal fees. I disagree; though the resolution was ineptly drawn and drawn post litem motam specifically with Spatt and the criminal litigation in mind, I know of no reason why that should serve to disqualify it from full effectiveness for all the expenses incurred by Spatt in defending himself for his actions as a corporate officer. Certainly, the corporation could lawfully indemnify the prior payment of legal fees. At the time of the resolution's enactment, the common law in New York was that such expenses in a criminal antitrust suit were not reimbursable by judicial fiat in the absence of corporate charter or resolution (Schwarz v. General Aniline & Film Corp., 305 N.Y. 395, 113 N.E. 2d 533.)

I conclude that the deduction taken by the taxpayer for all counsel fees paid in the antitrust suits should have been allowed. Summary judgment for the amounts sought, including interest, is granted plaintiff on the claim asserted in 65 Civil 3248 and on Count One of 66 Civil 1207.

In spite of the resolution, I hold that plaintiff may not recover the fine which forms the basis of Count Two of No. 66 Civil 1207. Tank Truck Rentals, Inc. v. Commissioner of Internal Revenue, 356 U.S. 30, 78 S.Ct. 507, 2 L.Ed.2d 562, and Hoover Express Co. v. United States, 356 U.S. 38, 78 S.Ct. 511, 2 L. Ed.2d 568. CENTRAL is bound by the holding in those cases that fines are not deductible business expenses and it did not deduct its or Spatt's fines on its 1961 tax return. Now, six years later, it says that it should be entitled to do so on the theory that the fine to Spatt rep-

resented additional compensation to him, or in the alternative, that it was authorized by the indemnification resolution of 1961 which preceded its payment. It attempts to help this argument along by saying that it received consideration, from Spatt, who was anxious to vindicate himself, in the form of his plea of nolo which benefited the corporation in that it obviated what would have been a lengthy and costly second trial and decreased its exposure to the treble damage threat. The trouble with this argument, assuming some support for it in the record, is that, whereas it might justify to a complaining stockholder the resolution providing for such payment (cf. Koster v. Warren, 9 Cir., 297 F.2d 418), it does not serve to change the character of the fine. On a corporate policy, in fact, Spatt had been out on a pension for six years preceding the payment of the fine, which would exclude any payment of compensation, as such, for services. A contractual obligation from CENTRAL to Spatt to pay him further "compensation" would not compel the federal taxing authorities to treat it as a business expense or additional compensation or by any other name so as to make it deductible to the corporation.

The holdings in *Tank Trunk Rentals* and *Hoover Express* are quite clear. On grounds of public policy, there the policy of the States, the Court held the fines paid by the taxpayer not deductible as ordinary business expenses for the reason that such action would serve to frustrate and was frustrating the State's legitimate interest in maintaining its highways, an interest which was promoted by imposing fines and which would be affected if the sting were taken out of the fines by permitting their deductibility. Here the federal policy of freeing business from monopolization would be equally frustrated if the sting of the fines imposed were permitted to be deducted on some other theory. Whether or not fines should be included in the fringe benefits necessary to entice corporate officers, is a matter of corporate policy and the States which

regulate them (See Section 723, Business Corporation Law, New York, and cf. Sachs v. Commissioner of Internal Revenue, 8 Cir., 277 F.2d 879). All we say is that, irrespective of who pays them and how they are treated, these fines are not deductible.

Motion for summary judgment is granted except on Count Two of No. 66 Civil 1207, which is denied to plaintiff and granted in favor of the Government.

Settle judgment on notice.