BeNNett, Judge,
delivered the opinion of the court:
This case is 'before the court on defendant’s motion for summary judgment. The plaintiff, appearing pro se, is seeking the recovery of $1,061 allegedly due as the result of the overpayment of income taxes for the year 1968. It is concluded upon the briefs and without oral argument that the petition should be dismissed.
On February 17, 1969, the plaintiff was arrested and later convicted in California on charges of sex perversion. The day following his arrest, February 18,1969, his home was broken into 'and burglarized. The thieves stole possessions worth $1,431. Thereafter, the plaintiff spent $4,380 in attorney’s fees in his unsuccessful defense of the criminal charges. On his tax return for the year 1968, which was filed just prior to April 15,1969, plaintiff Messina sought to deduct both the value of the stolen goods and the attorney’s fees taken or spent earlier in 1969. The Internal Revenue Service (IRS) allowed the theft loss as a deduction, but applied it to the 1969 tax year, as the year in which the loss occurred. The attorney’s *158 fees were disallowed entirely as a deduction. Since the plaintiff’s 1969 taxable income was only $239 (due to bis arrest and incarceration after February of 1969), the unused portion of the loss was first carried back '3 years and applied against the plaintiff’s 1966 taxable income of $3,403, which absorbed the unused balance of the loss.[1] This resulted in a refund to the plaintiff of $68.
The plaintiff contends that the refund should be larger, arguing, first, that his attorney’s fees were an allowable deduction under either IRC § 165(c) (3) as a casualty loss, or under IRC § 162(a) as an ordinary and necessary business expense. In addition, the plaintiff urges that the loss carry-back provisions as applied to his theft loss achieve an inequitable result, and should not be followed in this case.
Dealing first with the issue of the deductibility of the plaintiff’s attorney’s fees under IRC § 165(c) (3), it should be noted that the taxpayer views his arrest and trial as a “casualty” within the language of the Code. While this might be true in the broad sense of the word, and he did suffer economic detriment, the Code does not envision this as a casualty within § 165. More importantly, § 165 (c) (3) only permits a deduction for “losses of property not connected with a trade or business, * * Alexandre R. Tarsey, 56 T.C. 553 (1971); John J. Sullivan, 30 CCH Tax Ct. Mem. 1219 (1971). In Tarsey, for example, the plaintiff sought to deduct attorney’s fees that grew out of an auto accident. The fees were held to be a casualty loss only if they were spent to establish the loss of the property itself and to ascertain its value, which was not the case there, nor here. The focus is the loss of property as the result of the cásualty. Plaintiff Messina argues that the fees alone are property and should be deductible. This argument appears to be contrary to the plain language of § 165 and the view of the Tax Court, and should not be adopted in this case.
The plaintiff, in the alternative, contends that his legal expenses constituted an ordinary and necessary cost of doing business under § 162(a). He reasons that his conviction was likely to result in the loss of his position with the California *159 Department of Human Resources; therefore, the money he spent to defend himself from the criminal charges was also spent to protect his livelihood. This argument has been made numerous times in the past under facts essentially the same as these. The general test for ascertaining whether an expense is business or personal in nature, and, hence, whether it is deductible or nondeductible under § 162 or the related §§262, 212, was clearly stated by the Supreme Court in United States v. Gilmore, 372 U.S. 39, 48 (1963):
The principle we derive from these cases is that the characterization, as “business” or “personal,” of the litigation costs of resisting a claim depends on whether or not the claim arises in connection with the taxpayer’s profit-seeking activities. It does not depend on the consequences that might result to a taxpayer’s income-producing property from a failure to defeat the claim, * * *. [Emphasis in original.]
The test might be more simply viewed as looking to the origin of the operative facts leading to the litigation rather than the effects of the litigation on the taxpayer. See Nadiak v. Commissioner, 356 F. 2d 911 (2d Cir. 1966). Once this hurdle is mastered, then the issue of whether the expenses are “ordinary and necessary” may be examined to determine if the amount is otherwise deductible under these sections. For example, see Central Coat, Apron & Linen Serv., Inc. v. United States, 298 F. Supp. 1201 (S.D.N.Y. 1969).
This plaintiff’s case falls over the first hurdle. The legal fees were spent to defend a criminal charge that arose out of personal conduct. Plaintiff admits this. As such, the fees must be classified as personal expenses and are, therefore, nondeductible under the Code, regardless of the effect of such litigation on the plaintiff’s ability to earn an income. It makes no difference that the expenses were incurred while defending a criminal as opposed to a civil action. In Commissioner v. Tellier, 383 U.S. 687 (1966), the Court allowed a taxpayer to deduct sums spent in defending a criminal charge. However, in that case the plaintiff was a securities dealer who had been charged with fraud in certain of his dealings. The Court noted that the charges arose out of the conduct of his business and were, therefore, a business ex *160 pense. As such, they were deductible if they were also ordinary and necessary, which the Court found them to be. The Court in Tellier cited and applied the same test enunciated in Gilmore. Application of this test, as noted before, would result in the disallowance of this plaintiff’s deduction for the attorney’s fees under § 162(a). The plaintiff has not alleged any facts that would lead to a contrary conclusion under the Gibnore rationale.[2]
The plaintiff also raises two arguments with constitutional implications in an attempt to justify the deduction of his attorney’s fees. These should be dealt with, at least briefly. First, the plaintiff contends, that since he was not an indigent at the time of his trial, he had to pay an attorney out of 'his own pocket with after-tax dollars, whereas a defendant of more limited means would receive free 'legal services, the value of which would not be taxable income. 'Such a system, in effect, works an injustice on the defendant able to pay for his own legal services by taxing him on the value of such services, while not similarly taxing the poorer defendant. The plaintiff’s argument ignores the progressive nature of the entire income tax system. The poor are intentionally taxed at a lower rate than those with greater incomes. This distinction alone will not render a taxing scheme unconstitutional. Swallow v. United States, 325 F. 2d 97, 98 (10th Cir. 1963), cert. denied, 377 U.S. 951 (1964). This cannot be, as the plaintiff alleges, a violation of equal protection since the Fourteenth Amendment applies only to the states, not the Federal Government. Tuax v. Corrigan, 257 U.S. 312 332 (1921) ; LaBelle Iron Works v. United States, 256 U.S. 377, 392 (1921). The standard against which the Code must be tested in this case is the Fifth 'Amendment. For a tax statute to constitute a violation of the Fifth Amendment, it must be:
* * * so arbitrary as to constrain to the conclusion that it was not the exertion of taxation but a confiscation of property, that is, a taking of the same in violation of the Fifth Amendment, or, what is equivalent thereto, was so *161 wanting in basis for classification as to produce such, a 'gross and patent inequality as to inevitably lead to the same conclusion. * * *. [Brushaber v. Union Pac. R.R., 240 U.S. 1, 24-25 (1916).]
See also Barclay & Co. v. Edwards, 267 U.S. 442, 450 (1924). The Supreme Court, in Brushaber, held that a system of taxation which discriminates on the basis of income is not so wanting in a basis for classification as to produce a gross inequality. This leads to the plaintiff’s second argument along this line.
The plaintiff also contends that a tax statute which allows a man to deduct legal fees growing out of a criminal prosecution arising from business activities, while not allowing a deduction where the fees are paid to defend a charge arising out of personal activities, works an injustice that is unconstitutional in scope. Once again the Fifth Amendment is the standard against which the statute must be judged. The plaintiff’s argument really represents an attack on any distinction made by the Code on the business-versus-personal nature of the expense. The issue is whether the distinction is discriminatory to the point that it produces “a gross and patent inequality” without basis in reason. The answer must be in the negative.
Numerous cases have assumed the validity of the business-versus-personal distinction while attempting to classify various deductions claimed by the taxpayers.[3] This alone is not binding, but it is certainly persuasive.[4] The Supreme Court, in addition, has said generally:
* * * allowance of deductions from gross income does not turn on general equitable considerations. It “depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed.” [Citation omitted.] [Deputy v. DuPont, 308 U.S. 488, 493 (1940).]
*162 It is not difficult to envision bow tax distinctions based on tbe business-versus-personal nature of the expense might lead to certain inequitable results, but so long as there is some reasonable purpose supporting such a distinction, it will not amount to a violation of the Fifth Amendment.
The plaintiff alleges, finally, that while his belongings were stolen in 1969, the day after his arrest, the deduction allowed for this loss should be applied against his 1968 taxable income ($5,149), rather than first being deducted against his 1969 taxable income ($239) with the unused portion being carried back 3 years to 1966 (taxable income, $3,403) as the IES treated the loss. Plaintiff urges that the IES computation requires him to take the deduction in years in which his rates were low, whereas if the deduction were made from his 1968 income he would obtain a much greater benefit from the deduction. Plaintiff further argues that the casualty loss deduction is supposed to achieve a benefit equitably related to income but that the IES computation does not achieve this, so it should not be followed. The IES calculation, however, is mandated by the Code (§ 172) and the pertinent regulations. The court is not free to ignore these in a situation where it might be able to find a more equitable means of allocating the loss.
The defendant’s motion for summary judgment is granted. The petition is dismissed.

 See IRC § 172 anfl, more specifically, Treas. Reg. § 1.172-4(b) (1972).

 The plaintiff’s arguments, keyed to the decisions In Commissioner v. Heininger, 320 U.S. 467 (1943), and Welch v. Helvering, 290 U.S. 111 (1933), dealing with the deductibility of certain expenses as “ordinary and necessary,” need not be reached once it is concluded that these are not business expenses.

 See Commissioner v. Tellier, 383 U.S. 687 (1966) ; United States v. Gilmore, 372 U.S. 39 (1963) ; Commissioner v. Heininger, 320 U.S. 467 (1943) ; Kornhauser v. United States, 276 U.S. 145 (1928).

 See Wood v. Commissioner, 462 F. 2d 691, 694 (5th Cir. 1972), where the court made the following observation :
“* * * Those of us who must digest an occasional overcooked statute, regulation, or bulletin in the Internal Revenue Code as part of our staple judicial diet are conditioned by years of gastronomic experience to conclude that the Code is not constitutionally indigestible. * *