STUART PERKAL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Perkal v. Commissioner
Docket No. 7378-81.
United States Tax Court
T.C. Memo 1983-489; 1983 Tax Ct. Memo LEXIS 299; 46 T.C.M. (CCH) 1117; T.C.M. (RIA) 83489; August 16, 1983. *299 In 1976, petitioner's medical license was revoked and he did not practice medicine during any part of the year. Held, expenditures incurred by petitioner during 1976 in connection with his membership in a country club were nondeductible personal expenses. Petitioner failed to prove that he was engaged in carrying on a trade or business of medicine during 1976 or that the expenditures met the requirements of secs. 162 and 274, I.R.C. 1954. Gerald H. Lean, for the petitioner. Clare J. Brooks, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By statutory notice dated January 9, 1981, respondent determined a deficiency of $3,276 in petitioner's Federal income tax for his 1973 taxable year. After concessions, the sole issue for decision is whether certain country club dues paid by petitioner in 1976 are deductible under section 162(a), I.R.C. 1954, as ordinary and necessary business expenses. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The first and second stipulations of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner, Stuart Perkal, was a resident of Baltimore, Maryland *300 at the time of filing his petition in this case. He and Pamela Perkal timely filed joint Federal income tax returns for the years 1973 and 1976 with the Internal Revenue Service Center at Philadelphia, Pennsylvania. During the years prior to 1975, petitioner was a practicing physician. On March 20, 1975, petitioner was convicted in the United States District Court for the District of Maryland of a violation of 18 U.S.C. secs. 1341 and 1342; aiding and abetting mail fraud. As a result of this conviction, petitioner's medical license was revoked and later suspended until such time as his petition for writ of certiorari to the Supreme Court was determined. On October 20, 1976 the Supreme Court denied petitioner's petition and, based on this final determination, the Commission on Medical Discipline of Maryland concluded that petitioner had been convicted of a crime of moral turpitude and revoked his license to practice medicine and surgery in the State of Maryland on November 9, 1976. As a result of these events, petitioner was legally unable to practice medicine during most of 1976 and did not, in fact, practice medicine during any part of that year. Petitioner's only activities *301 with respect to his medical practice in 1976 consisted of collecting receivables and attempting to overturn his conviction in order to regain his license. Petitioner has not regained his medical license and is unable to practice medicine. During 1976, petitioner continued to pay rent on his office space and paid for telephone service even though both were not used exclusively in his medical business during that year. He did not, however, continue to pay wages to his employees in his medical practice during 1976. During the years 1971 through 1976, petitioner and his family were members of the Bonnie View Country Club in Baltimore, Maryland. [1] *302 Prior to the time his medical license was revoked, petitioner used this country club primarily as an entertainment facility. [2] In 1976, petitioner paid mandatory dues and assessments to the Bonnie View Country Club in the amount of $1,662.35. He also paid bills from the club for junior dues for his children and charges made at the snackbar and golfer's grill. On the joint Federal income tax return filed by petitioner and Pamela Perkal for 1976, petitioner deducted the entire amount of money paid to the Bonnie View County Club as ordinary and necessary expenses of his medical business. [3] *303 In his statutory notice of deficiency, respondent disallowed these deductions in their entirety. Petitioner now concedes that any amount over and above the mandatory charges for dues and assessments, Christmas fund and miscellaneous totaling $1,662.35 were personal expenses. Thus, the sole issue for decision is the deductibility of these mandatory charges. OPINION Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Thus, for any expense to be deductible under section 162, a taxpayer must be presently engaged in a trade or business during the taxable year in question. In the instant case, respondent has determined that petitioner was not carrying on a trade or business of medicine in 1976 because his license was revoked during the year and he, in fact, did not treat any patients during the entire year. Petitioner, however, contends that the pursuance of appeals in trying to get his conviction overturned so that he might regain his medical license, along with the collection *304 of accounts receivable, constituted the active conduct of a trade or business. With respect to this issue, petitioner bears the burden of proving that respondent's determination is incorrect. Welch v. Helvering,290 U.S. 111 (1933); Corbett v. Commissioner,55 T.C. 884, 887 (1971). His evidence must be convincing. Corbett v. Commissioner,supra.
Whether or not ctivities carried on by an individual can be characterized as those of a trade or business under section 162(a) is a question of fact. Mere membership in good standing in a profession or the intention to return to a trade or business at some indefinite time does not establish the requisite conduct of a trade or business. Corbett v. Commissioner,supra;Owen v. Commissioner,23 T.C. 377, 380 (1954). Petitioner did not actively practice medicine in 1976 because he was involved in his criminal trial and subsequent appeals; and, after April of 1976 when his license was suspended, he could not legally practice medicine. In our opinion, petitioner has not proven by convincing evidence that he was actively carrying on the business of medicine during 1976. He was not even a member in good standing of the medical profession during *305 the year, and his activities at best constituted preparations to reenter the medical profession. In reaching this conclusion, we find petitioner's reliance on the Supreme Court's decision in Commissioner v. Tellier,383 U.S. 687 (1966), misplaced. Tellier involved the question of whether expenses incurred in the unsuccessful defense of a criminal prosecution are deductible under section 162(a). In finding such expenditures deductible, the Court noted that the criminal charges against the taxpayer found their source in his business activities as a securities dealer and thus qualified under United States v. Gilmore,372 U.S. 39 (1963), as "'expenses paid or incurred * * * in carrying on any trade or business' within the meaning of section 162(a)." Commissioner v. Tellier,supra at 688, 689. The petitioner contends in his reply brief that the holding in the Tellier case "is clear--that activities of defending oneself from criminal charges arising out of one's trade or business are in and of themselves activities of engaging in that trade or business." While we believe it far from clear that petitioner's interpretation of the Tellier decision is correct, we need not face the contention *306 directly for there is no evidence in the record that petitioner's criminal conviction arose out of his business activities as a physician. [4] We thus find Tellier distinguishable on this crucial fact. Furthermore, Tellier involved legal fees while the instant case involves the deductibility of country club dues and assessments. Even if petitioner's activities were sufficient to constitute the active carrying on of the business of medicine during 1976, petitioner must establish that the country club was used primarily for the furtherance of such business and that the expenditure was directly related to the active conduct of such business before the country club dues and assessments may be deducted under section 162(a). Sec. 274(a)(1)(B). In determining whether a club membership was used primarily for business, section 1.274-2(e)(4)(i), Income Tax Regs., provides in part: All of the facts and circumstances of each case shall be considered *307 in determining the primary use of a facility. Generally, it is the actual use of the facility which establishes the deductibility of expenditures with respect to the facility; not its availability for use and not the taxpayer's principal purpose in acquiring the facility. Objective rather than subjective standards will be determinative. If membership entitles the member's entire family to use a facility, such as a country club, their use will be considered in determining whether business use of the facility exceeds personal use. The factors to be considered include the nature of each use, the frequency and duration of use for business purposes as compared with other purposes, and the amount of expenditures incurred during use for business compared with amount of expenditures incurred during use for other purposes. * * * The regulations also provide that, if more than 50 percent of the total calendar days of use was primarily for business, then the taxpayer is deemed to have satisfied the primary use test. Sec. 1.274-2(e)(4)(iii), Income Tax Regs.
With respect to the requirement that the expenditure be directly related to the active conduct of a trade or business, the regulations *308 provide that the taxpayer must have more than a general expectation of deriving income or a specific business benefit at some future time. Sec. 1.274-2(c)(3)(i), Income Tax Regs. A mere expectation of deriving goodwill from an expenditure is insufficient to support a deduction. In the instant case, petitioner testified that he maintained his country club membership in order to maintain the status quo of his medical practice and to avoid forfeiting his initiation fee. He further testified that neither he nor his family used the club at all during 1976. However, the evidence in this case clearly undermines petitioner's contentions. As respondent has pointed out, petitioner could have become an inactive member during 1976 without losing his initiation fee. More importantly, the bills from the Bonnie View Country Club during the year 1976, which have been stipulated into evidence, clearly indicate that there was some use made of the club during the year in question. Petitioner has failed to introduce any evidence concerning the nature of these charges or substantiating that they were incurred primarily for the furtherance of his medical business. Since petitioner bears the burden *309 of proof, we must assume that these charges were of a personal nature and therefore are nondeductible. [5] Thus, since there was no business usage of the club during 1976 and the only usage at all was of a personal nature, we hold that petitioner's use of the club during 1976 was primarily personal in nature and he is not entitled to any deduction for club dues and assessments. Decision will be entered for the respondent.
Footnotes
1. The Bonnie View Country Club charges new members an initiation fee which ranges from $1,000 to $2,500. This initiation fee is normally not refundable, but the board of directors may grant a variance or waive the initiation fee for a rejoining member. A member may also take a leave of absence which would reduce dues to $2.00 a month and the monthly assessment for a member over 35 to $22.00 a month. The Bonnie View Country Club did not have a waiting list for membership in 1976 and has never had a waiting list. 2. Petitioner's dues and expenses paid to the club were allowed in full on the audits conducted by respondent's agents of petitioner's Federal tax returns for the years 1972 through 1975.↩
3. Petitioner claimed a net operating loss of $12,562 on his 1976 return. Based on this loss, he and Pamela Perkal timely filed a Form 1045, Apolication for Tentative Refund, to carry back the 1976 net operating loss to 1973. Petitioner received a refund of $6,330 for the income tax year 1973 as a result of the net operating loss carryback; however, in his statutory notice of deficiency, respondent determined that petitioner's net operating loss deduction for 1973 was only $6,010 creating a deficiency in petitioner's Federal income tax for 1973 of $3,276.
4. We note petitioner's statement in his reply brief that the basis for petitioner's aiding and abetting mail fraud conviction was the billing for patient visits which did not occur. The facts forming the basis for the conviction are not in evidence.↩
5. Indeed, petitioner has conceded as much. However, he argues on brief that it is a reasonable assumption that these charges were incurred by nonmember friends of petitioner who reimbursed him. Petitioner has offered absolutely no evidence in support of this position and we find it unpersuasive.↩