George H. Newi and Sarah Newi v. Commissioner.
Newi v. Commissioner
Docket No. 2803-67.
United States Tax Court
T.C. Memo 1969-131; 1969 Tax Ct. Memo LEXIS 165; 28 T.C.M. (CCH) 686; T.C.M. (RIA) 69131; June 26, 1969, Filed *165 Held: 1. Christmas tips given by petitioner to various office hands, delivery boys, elevator starters, doormen and maitre d's are not deductible under section 162(a) or were not substantiated as required by section 274(d). 2. Petitioner has failed to substantiate a deduction under section 162 for taxicab fares in addition to the amount already allowed by the respondent. 3. Petitioner used one room of his apartment extensively for purposes that were appropriate and helpful and proximately related to his business of being an outside salesman of television time. It is held that 25 percent of the rental, cleaning, and lighting expenses of his three-room apartment and 20 percent of such expenses attributable to his four-room apartment are deductible under section 162. Cohan v. Commissioner [2 USTC 489], 39 F. 2d 540 (C.A. 2, 1930). 4. Based upon petitioner's testimony, it is estimated that 50 percent of the charges appearing on his total home telephone bill for 1964 was attributable to business calls deductible under section 162. Cohan v. Commissioner, supra. 5. An insurance policy providing for ordinary life coverage and monthly income payments to petitioner's wife or children in the *166 event of his death does not constitute "accidental death insurance," and the premiums attributable thereto are not deductible as medical expenses under section 213. Gabriel T. Pap, 51 E. 67th, New York, N. Y., for the petitioners. Marvin A. Fein, for the respondent. STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: The Commissioner determined a deficiency in petitioner's income tax for the calendar year 1964 in the amount of $901.22. The parties have made certain concessions relating to this deficiency amount. The issues remaining for our decision are as follows: (1) Whether certain "Christmas tips" given by petitioner to various office hands, delivery boys, elevator starters, doormen, and maitre d's are deductible as ordinary and necessary business expenses under section 162(a) of the Internal Revenue Code of 1954[1] and/or as entertainment expenses under section 274. (2) Whether petitioner is entitled to deduct certain taxicab fares, in addition to those allowed by respondent, as ordinary 687 and necessary business expenses pursuant to section 162. (3) Whether petitioner *167 may deduct under section 162 amounts incurred for the rental, cleaning, and lighting of one room of his apartment, which was used by him for business purposes. (4) Whether certain telephone calls charged to petitioner's home telephone, in addition to those allowed by respondent, are deductible as ordinary and necessary business expenses within the meaning of section 162. (5) Whether premiums paid by petitioner for an insurance policy providing ordinary life coverage and monthly income payments to petitioner's wife or children in the event of his death are deductible as medical expenses under section 213. Findings of Fact Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. The legal residence of George H. and Sarah Newi at the time of filing the petition herein was New York, New York. Their joint income tax return for the calendar year 1964 was filed with the district director of internal revenue at New York, New York. George H. Newi (hereinafter referred to as the petitioner) was employed during the year here involved as an outside salesman of television time for the American Broadcasting Company *168 television network (hereinafter referred to as "ABC"). Issue 1. Christmas Tips At Christmas time during the year in issue, petitioner claims that he gave an average of $10 each to three office hands, two delivery boys, two elevator starters, three doormen, and six maitre d's for a total expenditure of $160. Petitioner did not maintain a record of these Christmas tips. He received no reimbursement from ABC for such tips. In a statement attached to his 1964 tax return, the petitioner claimed a deduction in the amount of $160 for "Xmas business tips (not exceed $25.00/person)." This amount was disallowed by the respondent in entirety due to lack of substantiation and on the further ground that such deduction was not allowable under section 274. Issue 2. Taxicab Fares In the course of his selling activities, petitioner traveled by taxicab from his employer's place of business located at 7 West 66th Street, New York, New York, to the offices of various advertising agencies and clients. A partial listing of the advertising agencies visited by the petitioner during the year in issue is as follows: Company
Location
N. W. Ayer
58th and 6th
G.M. Basford
52nd and 5th
Ted Bates
52nd and 5th
Batten, Barton, Durstine and Osborne
46th and Madison
Benton and Bowles
52nd and 5th
Leo Burnett
53rd and Park
Castor-Hilton
52nd and Lexington
Compton Advertising
59th and Madison
Dancer, Fitzgerald and Sample
45th and Madison
Doherty, Clifford, Steers and Schenfeld
43rd and 5th
Doyle, Dane and Bernbach
43rd and 6th
William Esty
42nd and Madison
Foote, Cone and Belding
42nd and Park
Fuller, Smith and Ross
52nd and 5th
Grey Advertising
47th and 3rd
Kenyon and Ekhardt
42nd and Park
Lennen and Newell
47th and Madison
McCann-Erickson
47th and Lexington
McCann-Marchalk
58th and 6th
Richard K. Manoff
48th and 3rd
Maxon Advertising
50th and 6th
Norman, Craig and Kummnll
52nd and Madison
North Advertising
58th and Lexington
Ogilvy, Benson and Mather
48th and 5th
Parkson Advertising
52nd and Park
Sullivan, Stauffer, Cowies and Baywell
51st and Lexington
J. Walter Thompson
43rd and Lexington
Young and Rubicam
48th and Madison
*169 688 Petitioner took an average of eight or nine taxi rides per work day. The taxicab rate in effect in New York City during 1964 was 25 cents for the first quarter of a mile and 5 cents for each one-fifth of a mile thereafter. Petitioner customarily tipped the cab driver 20 to 30 percent. Petitioner was partially reimbursed by ABC for his taxi trips in the amount of $2 or $3 per day. He did not keep a record of his taxicab expenses. The statement attached to petitioner's 1964 return contains the following explanation for petitioner's claimed deduction of $963.60 for taxicab expenses: Taxis, 219 days at an average of $4.40 $963.60. In his notice of deficiency, respondent did not contest the number of days, but allowed only $3 per day for taxicab fares. Thus, respondent disallowed $306.60 of the claimed taxicab expense, citing lack of substantiation as his reason therefor. Issue 3. Rental, Cleaning and Lighting of Study In 1964, the petitioner and his wife rented a three-room apartment at $260 per month for 6 months. Later in the same year, the petitioner, his wife, and a newly-born infant moved to a four-room apartment in the same building for which he paid $300 per month for 5 months. *170 Petitioner's electric bills during the year in controversy were in the total amount of $48.93 for the three-room apartment and $60.42 for the four-room apartment. The three-room apartment had a 12 foot by 13 foot bedroom with an adjacent bathroom, a 12 foot by 20 to 24 foot living room and a kitchen. The four-room apartment was approximately the same as the three-room apartment except that it had an additional bedroom which was slightly smaller than the master bedroom. In addition, both of these apartments had an 8 foot by 8 to 10 foot room which adjoined the living room, but was separated therefrom by partitions and doors. This room (hereinafter referred to as the study) was furnished with a big leather chair, a desk, a settee, a television set, a radio, some lamps and pictures. After dinner each night, petitioner would spend an average of 3 hours in the study reviewing his notes on the day's selling activities, studying various research materials and ratings, making his plans for the next day's work, and viewing the television advertisements of ABC and its competitor networks. Petitioner's wife and child occasionally entered the study, but did not convert it to their personal use. *171 The study was sometimes used by petitioner for discussions with business acquaintances. However, the study was not used by petitioner or his wife for personal entertaining or personal television viewing. The petitioner's personal television viewing was done on other television sets located in the living room and the bedroom. Petitioner was not requested by his employer to set aside a portion of his apartment for office work, and ABC's office building was open and available for petitioner's use during the evening hours. On his Federal income tax return for the calendar year, petitioner deducted an amount equal to one-third of the rental, cleaning, and lighting expenses attributable to his three-room apartment, and one-fourth of the rental, cleaning and lighting expenses for his four-room apartment. He included these deductions in an itemized statement of "outside salesman expenses" attached to his return as follows: Rent - value of one room of apartment
$958.33 [2] *172 Cleaning - value of one room of apartment
65.00
Lighting - value of one room of apartment
31.41 The respondent disallowed these amounts in entirety on the basis that they do not constitute ordinary and necessary business expenses within the purview of section 162. Issue 4. Home Telephone Expenses Petitioner used his home telephone to make approximately two business calls per night to clients, employees of various advertising agencies, and office associates. Many of those whom he called lived outside the New York area in Connecticut or New Jersey. With the exception of the months of January and February of 1964 when she was working, petitioner's wife often used 689 their home telephone during the day to call her friends. However, a majority of her calls were local since most of her friends lived in the New York City area. During the year in controversy, the petitioner paid telephone bills totaling $303.97 *173 for their home phone. Much of this amount was attributable to toll calls and long-distance calls appearing on petitioner's phone bill each month. The petitioner treated 75 percent of his home telephone bill ($227.29) and an additional $50 for unreimbursed business calls made from public telephone booths as deductible business expenses on his 1964 tax return. The Commissioner allowed the entire $50 for outside calls. However, he allowed only 25 percent of petitioner's home telephone bills with the explanation in his statutory notice that the remaining 50 percent ($151.30) claimed by petitioner represented nondeductible personal expense. Issue 5. Insurance Premiums In March 1964, petitioner paid an annual premium in the amount of $369.25 on an ordinary life insurance policy issued by Hartford Life Insurance Company. Under the terms of this policy, the insurance company agreed to pay the face amount of $25,000 to the designated beneficiary (petitioner's wife if living; otherwise to surviving children of their marriage) upon receipt of proof of petitioner's death. At the same time, petitioner paid an additional annual premium of $257.50 with respect to a "Supplemental Agreement for Family *174 Income" attached to the policy. Under this agreement, the insurance company promised to make a $500 monthly income payment to the beneficiary under the policy for a period commencing with the date of death and ending on a specified termination date. No medical benefits were payable to petitioner under either the ordinary life provisions or the monthly income provisions of petitioner's policy with Hartford Life Insurance Company. In an itemized list of claimed medical and dental expenses, petitioner sought to deduct the above-mentioned premiums as follows: Accidental Life insurance premiums $699.95. In his statutory notice, respondent disallowed the entire $699.95 on the grounds that no part thereof is deductible under section 213. However, respondent concedes on brief that the petitioner is entitled to a deduction under section 213 for $73.20 of this amount representing insurance premiums in the amount of $4.50 and $9.50 for waiver of premiums coverage during total and permanent disability, $25 for double indemnity coverage, and $34.20 for accidental total disability coverage. Thus, only the annual premiums for ordinary life coverage ($369.25) and for monthly income payment coverage *175 ($257.50) totaling $626.75 remain in dispute. Opinion 1. Christmas Tips Petitioner testified that the $10 Christmas tips he gave to three office hands, two delivery boys, two elevator starters, three doormen, and six maitre d's were calculated to obtain better and faster service from these persons, thereby saving him valuable time in conducting his business activities. For instance, he stated that such tips were intended to encourage ABC's office hands and delivery boys to deliver his films and other items more rapidly; to get the elevator starters at various office buildings he visits to hold the elevator when they see petitioner rushing to get on board; and to persuade the maitre d's and doormen at various restaurants where petitioner entertained clients to obtain for him tables and taxicabs more rapidly. As regards the petitioner's rather sketchy testimony concerning the tips to the office hands, delivery boys and elevator starters, he has failed to satisfy the basic tests of deductibility under section 162(a). [3]In order for an expenditure to be deductible thereunder, it must be shown that such expenditure is ordinary and necessary and proximately related to the taxpayer's trade *176 or business. Welch v. Helvering, 290 U.S. 111, 113 (1933); Kornhauser v. United States, 276 U.S. 145, 153 (1928). Petitioner has failed to make any concrete showing that the tips to the office hands, delivery boys, and the elevator starters were appropriate and helpful, or indeed even proximately related, to his selling activities. Petitioner's explanation of his tips to the maitre d's and doormen is patently plausible. The common experience of mankind would bear out the fact that an additional gratuity 690 to a maitre d' or a doorman will, on occasions too often to be a mere coincidence, have the effect of securing a better table location or a more prompt taxicab. Indeed, a reasonable case can be made that such tips are ordinary necessary and proximately related to a salesman's duty of entertaining his clients. However, as expenses related to business entertainment, these tip expenses must also satisfy the rigorous substantiation requirements of section 274(d). [4] *177 Since each of the tips was under $25, the petitioner is not required to produce supporting documentary evidence of these expenditures. Section 1.274-5(c)(2)(iii)(b), Income Tax Regs.[5] *178 Nevertheless, this does not relieve him of the burden of establishing the remaining elements required under section 274(d), namely, the time and place, business purpose, and business relationship to the taxpayer of each person entertained. [6] In this regard, petitioner's all too general testimony did not specify among other things the restaurants where the maitre d's and doormen involved worked, specific dates of business entertainment at each establishment, the business purpose of the entertainment at each place, and the business relationship of those entertained to the petitioner. Moreover, the petitioner admitted that he did not enter these expenditures in his diary, nor did he offer any other evidence to corroborate his testimony. Based upon the foregoing, we hold that petitioner has either failed to qualify any portion of the claimed Christmas tip expenses for deduction under section 162(a), or has failed to meet the substantiation requirements of section 274(d) with respect to said amounts. 2. Taxicab Fares Petitioner testified *179 that he was partially reimbursed by his employer for his taxicab fares in the amount of $2 or $3 per day. Moreover, petitioner has been allowed a deduction for an additional $3 per day for 219 days by the respondent. He seeks a deduction for taxicab fares in the additional amount of $1.40 per day for 219 days. Petitioner's testimony and evidence fails to show that his taxicab expense exceeded the $5 to $6 per day which has been allowed by respondent and reimbursed by his employer. Accepting petitioner's testimony that he called on eight or nine advertising agencies and clients per day, he has been allowed or reimbursed in the approximate amount of 65 cents per taxicab trip. Under the taxi rates existing in New York at that time, petitioner could travel over one mile per trip on that amount. Inasmuch as all of the advertising agencies which petitioner visited were located in midtown Manhattan in close proximity to his office, and since many of these agencies were within walking distance of one another, we conclude that respondent's allowance for unreimbursed taxicab fares is reasonable, and that petitioner has failed to carry his burden of proof that the contrary is true. Rule 32 of the Tax Court Rules of Practice. *180 3. Rental, Cleaning, and Lighting of Study We found petitioner's testimony concerning the extensive business use of the study to be credible. He testified that his wife and child did not use the study for their own purposes; that it was, in fact, too small and uncomfortable for personal entertaining and even for joint television viewing; and that his personal television viewing with his wife was done on sets in the living room or the bedroom. It thus appears that the study was used only during the approximately 3 hours each night that petitioner used it to review the day's notes on his visits to various advertising agencies and clients, to plan the next day's activities, to 691 study various research materials and ratings, and to view the television advertisements of ABC and its competitors. We therefore conclude that the study was used regularly and extensively by petitioner for business purposes that were proximately related to his business of being an outside salesman of television time. Respondent contends that the expenditures incurred by petitioner for the rental, cleaning, and lighting of the study were not "ordinary and necessary" within the meaning of section 162. He reasons *181 that these expenses were not necessary inasmuch as petitioner was not required by his employer to maintain office space in his apartment, but to the contrary, was furnished an office that was open and accessible to him during the evening hours. In our opinion, the respondent misconceives the nature of the "ordinary and necessary" standard contained in section 162. The Supreme Court has indicated on more than one occasion that the term "necessary" imposes only the minimal requirement that the contested expenditure be "appropriate and helpful" to the taxpayer's business. Commissioner v. Tellier, 383 U.S. 687, 689 (1966); Welch v. Helvering, supra.Moreover, we are unaware of any legal requirement that the expenditure must be "required" before it qualifies as an allowable business expense. Commissioner v. Pacific Mills, 207 F. 2d 177, 180 (1953), affirming 17 T.C. 705 (1951); Waring Products Corporation, 27 T.C. 921, 929 (1957). The Supreme Court also noted in its opinion in the Tellier case, supra, that "The principal function of the term 'ordinary' in § 162(a) is to clarify the distinction, * * * between those expenses that are currently deductible and those that are in the nature *182 of capital expenditures * * *." Obviously expenses for rent, cleaning and lighting are not capital in nature. Hence, we hold that, under the particular circumstances of this case, petitioner's use of the study was appropriate and helpful to the conduct of his business, and consequently, the expenses relating thereto are deductible ordinary and necessary business expenses. We would not be deterred from this conclusion had it developed that the study was used on rare and isolated occasions for purposes other than the petitioner's trade or business. Nevertheless, we are not in accord with petitioner's method of computing the amount of the study expenses. If the rooms of petitioner's apartment were roughly equivalent in size, it may be reasonable to deduct one-third of the expenses of the three-room apartment and one-fourth of the expenses of the four-room apartment. However, the petitioner has stressed the smallness of the study and it appears from the petitioner's rather vague testimony on the dimensions of some of the rooms that the study (approximately 8 feet by 8 to 10 feet) is indeed smaller than the bedrooms (approximately 12 feet by 13 feet) and particularly the living room (approximately *183 12 feet by 20 to 24 feet). Using our best judgment with respect to the percentage of floor space used for business purposes, we hold that he is entitled to a deduction for 25 percent of the rental, cleaning, and lighting expenses [7] of the three-room apartment and 20 percent of such expenses attributable to the four-room apartment. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930).
4. Home Telephone Expenses Petitioner testified that most of the long distance and toll charges appearing on his home telephone bill were attributable to unreimbursed business calls which he made at night to clients, employees of various advertising agencies, and office associates, many of whom lived outside the New York City area. He stated that, because most of his wife's personal *184 acquaintances lived within the New York City area, a majority of her calls did not give rise to long distance and toll charges. *In view of this testimony, which we found to be credible, we hold that petitioner is entitled to a deduction in excess of the 25 percent previously allowed by respondent. However, due to petitioner's failure to identify with more specificity those charges appearing on his home telephone bill which resulted from business calls, we do not feel he is entitled to the 75 percent deduction that he claims. Therefore, using our best judgment, we estimate that 50 percent of his home telephone bill for the year in issue 692 is attributable to deductible business calls. Cohan v. Commissioner, supra.
5. Insurance Premiums We have carefully scrutinized the contested provisions of the insurance policy which petitioner characterizes as "accidental life insurance" deductible as medical expenses under section 213(a)(1). [8] These provisions do not provide "medical care" for the taxpayer, his spouse, or his dependents as that term was defined in section 213(e) (1) (A) during the year in issue. [9] In addition, there is no provision in the policy for the reimbursement of expenses *185 incurred for medical care. See section 1.213-1(e)(1)(i), Income Tax Regs., in effect for the year 1964. We therefore conclude that the annual premiums paid by petitioner during the year for the "Ordinary *186 Life Policy" and $257.50 for the "Supplemental Agreement for Family Income" represent nondeductible personal expenses under section 262. John A. Guglielmetti, 35 T.C. 668, 670, 673 (1961). Decision will be entered under Rule 50. Footnotes
1. Unless otherwise designated, all future section references are to the Internal Revenue Code of 1954.↩
2. As petitioner appears to acknowledge in his opening brief, he should have claimed $895 instead of $958.33. The parties have stipulated that the rental expense for the three-room apartment was $260 per month for 6 months or a total of $1,560 and $300 per month for 5 months of a total of $1,500 for the four-room apartment. Thus, one-third of the rental expense for the three-room apartment (1/3 x $1,560 =$520) plus one-fourth of the rental expense for the four-room apartment (1/4 x $1,500= $375) equals $895.
3. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) IN GENERAL. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *.↩
4. SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. * * * (d) SUBSTANTIATION REQUIRED. - No deduction shall be allowed - * * * (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation * * *, * * * unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item. (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained * * *. ↩
5. SEC. 1.274-5(c)(2). (iii) DOCUMENTARY EVIDENCE. Documentary evidence, such as receipts, paid bills, or similar evidence sufficient to support an expenditure shall be required for - (a) Any expenditure for lodging while traveling away from home, and (b) Any other expenditure of $25 or more * * *. ↩
6. Rev. Proc, 63-4, 1963-1 C.B. 474↩, 477. Question 16, which petitioner cites in support of his claim of deductibility, makes much this same point.
7. The parties have stipulated the total amounts paid by petitioner for the rental and lighting of the three-room and the four-room apartments supplied with the total amount of cleaning expenditures incurred with respect to the two apartments. We assume that the parties will agree to the total amount expended for the cleaning of each apartment for purposes of computing the deductible cleaning expense in the Rule 50 computation.↩
8. SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES. (a) ALLOWANCE OF DEDUCTION. - There shall be allowed as a deduction the following amounts, not compensated for by insurance or otherwise - (1) the amount by which the amount of the expenses paid during the taxable year * * * for medical care of the taxpayer, his spouse, and dependents * * * exceeds 3 percent of the adjusted gross income * * *. Of no materiality here is the fact that the above provision was amended effective for years beginning after December 31, 1966. ↩
9. SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES. * * * (e) DEFINITIONS. - For purposes of this section - (1) The term "medical care" means amounts paid - (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance) * * *. Of no materiality here is the fact that the above provision was amended effective for years beginning after December 31, 1966.↩