Norman J. FISCHER and Mary P. Fischer, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 70-C-322.

United States District Court, E. D. Wisconsin.

Dec. 1, 1971.

Michael, Best & Friedrich by Kenneth Luce and Robert A. Schnur, Milwaukee, Wis., for plaintiffs.

David J. Cannon, U. S. Atty., E. D. Wisconsin, Milwaukee, Wis., Thomas R. Jones, Atty., Dept. of Justice, Washington, D. C., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This is a tax refund suit brought by taxpayers Norman J. Fischer and Mary P. Fischer, his wife, for the recovery of income taxes allegedly overpaid for the year 1967. Mary P. Fischer is a plaintiff in this action because of her filing a joint return with her husband.

The following facts have been stipulated by the parties:

1. At all times pertinent herein, taxpayer was the president and a member of the board of directors of Medalist Industries, Inc., hereinafter referred to as Medalist. He owned 12,015 shares of Medalist common stock personally, and members of his immediate family owned 945 shares of Medalist common stock. In addition, taxpayer owned a qualified stock option to purchase 25,000 shares of Medalist common stock at a purchase price of $6.00 per share.

2. Medalist is a Wisconsin corporation originally incorporated with the name J. M. Nash Company, Inc., the name being changed to Medalist Industries, Inc. by stockholder action amending the Articles of Incorporation on June 30, 1967. Medalist was in 1967 and is now a manufacturer of athletic equipment, automated woodworking machinery, ductile iron products, and other equipment.

3. Under an indenture dated April 1, 1960 Medalist issued subordinated debentures convertible into common stock of Medalist in the principal amount of $370,000. During all of 1967, and at all times relevant hereto, there was outstanding convertible debentures in the principal amount of $260,000 registered

and owned, $200,000 by Capital Investments, Inc., and $60,000 by Thorp Small Business Investment Corporation, two small business investment companies. One $25,000 debenture registered in the name of Capital Investments, Inc. had been sold to and was owned by Helen J. Vollmer. These companies and Mrs. Vollmer will be collectively referred to as the debenture holders.

4. The authorized common stock of Medalist in April, 1960, and at all times prior to June 30, 1967, was four million shares with a par value of $1.00 per share, of which 1,729,000 shares were outstanding. These shares were traded in the national over-the-counter market.

5. At a meeting held June 30, 1967, the stockholders of Medalist adopted an amendment to the Articles of Incorporation effecting a reverse stock split by reducing the authorized common stock from four million shares to one million and increasing the par value per share from $1.00 to $4.00. After this reverse stock split, there were 432,250 shares outstanding. The proxy statement distributed to stockholders with the notice of the June 30, 1967 meeting, in reference to the above described debentures, stated:

"The reduction in the outstanding shares of common stock and the accompanying exchange of shares will necessitate corresponding adjustments in the conversion price at which the 6¼% convertible subordinated debentures may be converted into the common stock of the company."

6. On June 30, 1967, Medalist notified the convertible debenture holders that Medalist intended to redeem the debentures on the next interest paying date, October 1, 1967.

7. On or about July 27, 1967, two of the debenture holders, Capital Investments, Inc. and Thorp Small Business Investments Corporation, made claims that there was no provision in the debenture indenture of April 1, 1960, for an adjustment of the purchase price

upon conversion of the debentures in the event of a reverse stock split, and that the said debentures holders were entitled to convert their debentures into 91,550 shares of common stock of the company at the conversion price of $2.84 per share, irrespective of the reverse stock split. Medalist denied the validity of this claim and asserted that the conversion should be for 22,887 shares of Medalist common stock at $11.36 per share.

8. After a period of negotiations and threats of litigation by the debenture holders, a settlement agreement was reached on or about September 18, 1967, between the debenture holders and Medalist wherein Medalist purchased the debentures from the debenture holders for $457,740 plus interest of $7,969.18. This agreement was consummated on or about September 26, 1967.

9. In order to induce the debenture holders to enter into the above described settlement, taxpayer offered to sell and did sell on September 26, 1967, 2,250 shares of his common stock in Medalist for $4.20 per share to the debenture holders. Mr. Herman J. Jongebloed, a director and substantial stockholder of the corporation, also agreed to sell 1,250 shares of his common stock in Medalist to the debenture holders for $4.20 per share. The market value of the stock in the over-the-counter market at the time of the transaction was $16.625 per share.

The issue before the court is whether taxpayer is entitled to deduct from his income the difference between his cost basis in the stock and the fair market value of the stock on September 26, 1967.

The plaintiff urges that the threatened litigation would jeopardize the value of his stock as well as his reputation as a businessman. He therefore argues that such expenditure was made for the production, maintenance or conservation of income and that as such the expenditure was ordinary and necessary.

The allowance of tax deductions from gross income does not turn on general equitable considerations but rather on legislative grace. Without a clear statutory provision for a particular deduction, it may not be allowed. Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940).

As pertinent here, 26 U.S.C. § 162 provides:

"(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *."

In order to claim a deduction for any expense under this section, a taxpayer must first demonstrate that he is carrying on a trade or business within the meaning of the statute. Whether the activities of a taxpayer amount to carrying on a trade or business is largely a matter of degree and must be inferred from examination of the facts in the particular case. International Trading Co. v. Commissioner of Internal Revenue, 275 F.2d 578 (7th Cir. 1960). Although the taxpayer relies on the case of Mitchell v. United States, 408 F.2d 435, 187 Ct.Cl. 342 (1969) for the proposition that business executives are engaged in a trade or business separate from that of the company for which he works, that case is distinguishable from the action at bar. In *Mitchell*, the taxpayer was an officer and a director in several unrelated corporations from which he received substantial compensation. In the instant action, the record indicates that the taxpayer is the president and a member of the board of directors of Medalist only. As such, Mr. Fischer is an employee of Medalist; the record does not establish that he conducted any separate trade or business. I am unable to support Mr. Fischer's claim that he is entitled to a deduction under § 162.

In order to qualify as an expense allowed by § 212, the taxpayer

must prove that the expense incurred was both ordinary and necessary, as well as being incurred or paid during the taxable year for the production of income, or for the management, conservation or maintenance of property held for the production of income. Although the transfer of the taxpayer's stock in Medalist may have been "necessary" to prevent the threatened litigation, I am unpersuaded that the transfer was "ordinary". In my opinion, the transfer was designed to protect the corporation and also to support Mr. Fischer's reputation as a competent businessman. As such, it is a non-deductible expenditure. Welch v. Helvering, 290 U.S. 111, 54 S. Ct. 8, 78 L.Ed. 212 (1933). cf. Commissioner v. Tellier, 383 U.S. 687, 86 S.Ct. 1118, 16 L.Ed.2d 185 (1966).

■ Taxpayer was under no personal liability to the debenture holders and was under no legal duty to sell his Medalist stock to the debenture holders in order to precipitate a settlement. The debenture holders had made their claims against the corporation and not against the taxpayer. Although a lawsuit may have had burdensome consequences for Mr. Fischer, the origin of the dispute involved transactions with the corporation. I conclude that the taxpayer is not entitled to a deduction under § 212. United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). Anchor Coupling Co. v. United States, 427 F.2d 429 (7th Cir. 1970) cert. denied 401 U.S. 908, 91 S.Ct. 866, 27 L.Ed.2d 806 (1971). But cf. Surasky v. United States, 325 F.2d 191 (5th Cir. 1963). In my opinion it cannot be said that for tax purposes the expense in this case was incurred or paid for the production of income, or for the management, conservation or maintenance of property held for the production of income. Welch v. Helvering, supra.

Therefore, it is ordered that the plaintiffs' action be and hereby is dismissed.