RAYMOND WARREN JACKSON and GEORGIA CAVANAH JACKSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jackson v. Commissioner
Docket No. 3957-72.
United States Tax Court
T.C. Memo 1975-301; 1975 Tax Ct. Memo LEXIS 73; 34 T.C.M. (CCH) 1315; T.C.M. (RIA) 750301; September 30, 1975, Filed Raymond W. Jackson, pro se. Thomas J. Miller, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in petitioners' joint Federal income tax for the taxable year 1968 in the amount of $1,059.83. Petitioners have conceded some of the adjustments made by the Commissioner in his statutory notice of deficiency. The following issues are presented for decision: (1) Whether petitioners are entitled to a claimed business expense deduction under section 162(a), [1] Internal Revenue Code of 1954, for expenditures incurred by Raymond Jackson while employed *75 as an outside salesman; (2) Whether the deduction of $1,015 claimed for legal fees and the deduction of $800 claimed as paid to Hartford Accident and Indemnity are allowable as ordinary and necessary business expenses; (3) Whether petitioners are entitled to a dependency deduction for Kay Wood and are thus entitled to a deduction for medical expenses incurred for her benefit; and (4) Whether the deduction claimed by petitioners for medical expenses should be decreased because of lack of substantiation. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits, are incorporated herein by this reference. Petitioners Raymond W. Jackson and Georgia C. Jackson, husband and wife, resided in Oklahoma City, Oklahoma, when they filed their petition in this proceeding. Petitioners filed a joint Federal income tax return for the taxable year 1968 with the Internal Revenue Service Center, Austin, Texas. During the taxable year 1968, Raymond Jackson (hereafter referred to as petitioner) was an outside salesman for the Oklahoma City, *76 Oklahoma, office of Addressograph-Multigraph Corp. During 1968, Addressograph-Multigraph Corp. maintained a monthly commission account for petitioner. The account was credited, at the time of billing, with the commissions on products sold. Against this credit, the company charged draws, travel and entertainment expenses, leased car charges, telephone charges, and other miscellaneous amounts paid for or advanced to petitioner. Any net credit balance in this account was paid to petitioner at the end of each month. Petitioner included only the net amounts received (commissions earned less reimbursed expenses) in gross income for the taxable year 1968. Petitioner reported the following amounts as income from draw or commissions for the year 1968 from Addressograph-Multigraph Corp.: Date
Amount
1/31/68
$ 646.14
2/29/68
858.60
3/31/68
646.14
4/30/68
646.14
5/31/68
969.21
6/30/68
646.14
7/31/68
715.38
8/31/68
692.30
9/30/68
692.30
10/31/68
692.30
11/30/68
3,015.33
12/31/68
2,192.30
TOTAL
$12,412.28
In addition to the amounts reported as draw or commissions, Addressograph-Multigraph Corp. paid petitioner the following amounts in 1968 for travel *77 and entertainment expenses: Date
Amount
1/31/68
$ 74.89
2/29/68
30.60
3/31/68
181.48
4/30/68
128.70
5/31/68
206.42
6/30/68
124.63
7/31/68
751.15
8/31/68
116.73
9/30/68
249.69
10/31/68
70.02
11/30/68
214.54
12/31/68
276.05
TOTAL
$ 2,424.90
Addressograph-Multigraph also paid the following leased car expenses, telephone expenses, and miscellaneous expenses for the petitioner in 1968: Auto
Tires and Rental
Insurance
Battery
Telephone
Miscellaneous
$ 69.69
$ 12.50
69.69
12.50
$ 9.27
69.69
12.50
20.70
69.69
12.50
37.84
70.15
12.50
38.30
70.15
12.50
38.30
65.89
12.50
$ 78.56
159.21
65.89
12.50
83.75
65.51
12.50
84.22
65.51
12.50
73.92
65.51
12.50
62.12
$ 45.00
65.51
12.50
43.95
$812.88
$150.00
$ 78.56
$651.58
$ 45.00
During 1968, petitioner's sales territory was in Oklahoma. The majority of his commissions during 1968 resulted from sales in the greater Oklahoma City area. Despite the fact that other salesmen of the Oklahoma City office of Addressograph-Multigraph seldom solicited business outside their own sales territory, petitioner often sought *78 accounts from potential customers in cities outside the State of Oklahoma. These business trips were only made by petitioner after he obtained approval from his manager. As a result of petitioner's initiative, his sales for the taxable year 1968 and for several years preceding the year in issue were substantially above the company average. The expenses of many of petitioner's business endeavors were not advanced or reimbursed because it was the company's policy to only reimburse its salesmen for those expenses incurred in the pursuit of routine business. For the taxable year 1968, petitioner claimed a deduction of $3,562.48 for nonreimbursed, outside salesman expenses, more specifically set forth as follows: Item
Amount
Airplane Tickets
$ 664.36
Meals & Lodging
599.04
Car Rental
778.00
Air Travel Insurance
100.00
Tips
22.00
Taxi Fares, etc.
13.00
Parking
34.46
Parking Tickets
29.00
Auto Expense (25%)
592.46
Trailer Rental
18.05
Office Supplies
74.85
Secretarial Work
73.79
Manpower
160.25
Adding Machine Rental
15.30
Printing
89.37
Business Lunches
251.84
Business Phone Calls
46.71
TOTAL
$3,562.48
In his notice of deficiency, *79 the Commissioner determined that petitioner had not established that the aforementioned claimed deductions were ordinary and necessary business expenses and that the substantiation requirements of section 274(d) had not been satisfied. Respondent has since stipulated that all the amounts claimed, except that claimed for parking tickets, business phone calls, and taxi fares and portions of the amounts claimed for office supplies and printing, were actually expended by petitioner. Petitioner has conceded that only $56.57 was paid for secretarial work during 1968, instead of $73.79 reported on his income tax return. On his income tax return for the taxable year 1968, petitioner claimed, under miscellaneous deductions, a deduction of $1,015 for legal fees paid to Eagleton and Nicholson and a deduction of $800 for a payment to Hartford Accident and Indemnity. Respondent determined that the deductions were not allowable since petitioner had not established that the payments were for ordinary and necessary business expenses or were expended for the purposes designated. Respondent has since conceded that the amount claimed as paid to Hartford Accident and Indemnity and $115 of the legal *80 fees claimed were actually paid. The Eagleton and Nicholson firm, during 1968, represented Maison Blanche, a department store in New Orleans, Louisiana, in the collection of a judgment from petitioner. The amount paid to Hartford Accident and Indemnity represented a delinquent premium on a fidelity bond required under a previous employment in 1958. Petitioners' claimed medical expense deduction for the taxable year 1968 included $9.80 for medicine and drugs for Kay Wood and $19.50 for other medical expenses for Kay Wood. The Commissioner disallowed the deduction for medical expenses incurred for the benefit of Kay Wood on the ground that such amounts were not paid for a person qualifying as a dependent. Kay Wood and her mother are friends of petitioner. On July 30, 1968, the Children's Court of Oklahoma County, Oklahoma, ordered that Kay's custody be changed from her mother to petitioner. Kay was a member of petitioners' household during only four months of 1968. Petitioner did not claim a dependency exemption for Kay Wood on the 1968 joint Federal income tax return. Petitioner raises the dependency exemption issue for the first time on brief. However, since the question whether *81 Kay Wood qualifies as a dependent is before the Court in regard to petitioners' medical expenses, respondent did not object to the Court now also considering the dependency exemption issue. On the income tax return for the taxable year 1968, petitioners' claimed medical expense deduction also included $200 claimed as paid to Dr. Muengler and $125 claimed as paid to Dr. Felton. The entire $200 claimed as paid to Dr. Muengler and $105 of the $125 claimed as paid to Dr. Felton are in dispute for lack of substantiation. On April 15, 1970, the District Director of Internal Revenue at Oklahoma City notified petitioner that the income tax return for the year 1968 was being examined and an interview was arranged in the office audit division for May 6, 1970. The original interview was handled by Betty Wanatee, an office auditor. After the interview was completed, petitioner left his income tax records for the year 1968 with Betty Wanatee. On January 28, 1971 petitioner picked up some of his 1968 income tax records from the Internal Revenue Service office in Oklahoma City. At or about this time, petitioner indicated that some of his records which had been left with the audit officer had *82 not been returned and must have been lost by the Internal Revenue Service. A search was made for the alleged missing records belonging to petitioner and nothing was found. In July 1971 another office auditor, Martha Hadlock, was assigned to examine petitioners' 1968 income tax return. Betty Wanatee had resigned some time prior to that date. Mrs. Hadlock had her first interview with petitioner in August 1971. During that interview, petitioner noticed that Mrs. Hadlock had his yellow work sheet on which was compiled all of his expenses for the year 1968. Upon seeing the work sheet, petitioner made a statement to the effect of "there's the sheet they couldn't find when I picked up my records." Petitioner did not indicate during that interview that the Internal Revenue Service had lost any records other than the yellow work sheet. During this interview, petitioner's yellow work sheet was returned to him. Petitioner had another interview with Mrs. Hadlock in November of 1971. Petitioner had not brought to that interview any additional information or documents which Mrs. Hadlock had requested in the first interview. Upon being questioned as to the whereabouts of such documents, petitioner *83 made the statement that "you must have lost those records." OPINION Issue 1. Outside Salesman Expenses
On the Federal income tax return for the year 1968, petitioner claimed a deduction of $3,562.48 for business expenses incurred while employed as an outside salesman. Respondent disallowed the entire amount, which represents petitioner's alleged nonreimbursed business expenditures. Respondent takes the position that petitioner has not only failed to demonstrate that the deduction claimed represented ordinary and necessary expenses incurred in carrying on his trade or business, but also that, even if a deduction would otherwise be available under section 162(a), [2] such deduction must be disallowed at least in part in view of petitioner's failure to comply with the substantiation requirements of section 274(d) and the accompanying regulations. At trial respondent *84 attempted to support his determination with respect to the deductibility of the expenses under section 162(a) by showing the following: (1) that unlike most expenses incurred by petitioner, these expenses were not reimbursed by the company; and (2) that the portion of the expenses in question incurred by petitioner in pursuit of accounts outside his own sales territory were not ordinary and necessary expenses since other salesmen of the company's Oklahoma City office seldom solicited business outside their assigned sales territories. The expenditures in question were incurred by petitioner while seeking accounts both within and outside his own sales terriotory. On various occasions other salesmen of Addressograph-Multigraph were denied reimbursement for business-related expenses due to the fact that it was the company's policy to only reimburse its salesmen for those expenses incurred in the pursuit of routine business. Therefore, the failure of the company to reimburse petitioner does not preclude a finding that the nonreimbursed expenditures qualify as ordinary and necessary expenses within the meaning of section 162(a). His pursuit of accounts beyond his assigned sales territory *85 resulted in additional commissions and contributed to his outstanding sales record. The business trips to cities outside his sales territory were only made after approval was obtained from his manager. The disallowed expenses were thus directly related to petitioner's business--that of an outside salesman. The expenses were "necessary" because they were obviously "appropriate and helpful" in the earning of additional commissions and achieving his outstanding sales record. Welch v. Helvering,290 U.S. 111 (1933). They were "ordinary," not capital, in nature. See Commissioner v. Tellier,383 U.S. 687 (1966). Accordingly, we find that the expenditures in question, with the exception of those for parking tickets [3] and flight insurance, [4] are ordinary and necessary business expenses deductible under section 162(a). *86 Our finding that the disallowed expenditures qualify as ordinary and necessary business expenses does not end the inquiry. We must now determine whether petitioner has complied with the substantiation requirements of section 274(d) with respect to the portion of the deduction relating to travel and entertainment expenses. The requirements imposed by section 274 and the accompanying regulations are in addition to the requirements imposed by section 162. Section 274 sharply limits travel and entertainment expense deductions made after 1962 even though they might otherwise qualify under section 162. The regulations have been consistently upheld by this Court. William F. Sanford,50 T.C. 823 (1968), affd. 412 F.2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969). Section 274(d) provides that in order for claimed traveling and entertainment expenses to be allowed the taxpayer must substantiate "by adequate records or by sufficient evidence corroborating *87 his own statement (A) the amount of such expense * * *, (B) the time and place of the travel [or] entertainment, * * * (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of [the] persons entertained, * * *." Under this provision, a taxpayer must substantiate every travel or entertainment expenditure claimed as a deduction by either "adequate records" or other "sufficient evidence," for such expenditures as are not thus substantiated will be disallowed in full. William F. Sanford,supra.
Section 1.274-5(c) (2) of the Income Tax Regs. provides in part: (2) Substantiation by adequate records-- (i) In general. To meet the "adequate records" requirements of section 274(d), a taxpayer shall maintain an account book, diary, statement of expense or similar record (as provided in subdivision (ii) of this subparagraph) and documentary evidence (as provided in subdivision (iii) of this subparagraph) which, in combination, are sufficient to establish each element of an expenditure specified in paragraph (b) *88 of this section. It is not necessary to record information in an account book, diary, statement of expense or similar record which duplicates information reflected on a receipt so long as such account book and receipt complement each other in an orderly manner. * * * * *
(iii) Documentary evidence. Documentary evidence, such as receipts, paid bills, or similar evidence sufficient to support an expenditure shall be required for-- (a) Any expenditure for lodging while traveling away from home, and (b) Any other expenditure of $25 or more, except, for transportation charges, documentary evidence will not be required if not readily available. If a taxpayer cannot satisfy the "adequate records" requirement of section 274(d), section 1.274-5(c) (3), Income Tax Regs., provides that a taxpayer may alternatively satisfy the substantiation requirements by coming forward with corroborative evidence sufficient to support his own statement containing specific information as to each element of the expenditure, or such elements as have not been substantiated by adequate *89 records. Relying on the fact that petitioner introduced only the yellow work sheet, commission statements, and car rental invoices at trial and called no customer as a witness, respondent argues that petitioner has failed to maintain "adequate records" or to present corroborating evidence to substantiate the business purpose of his travel and entertainment expenses. Petitioner attempts to explain his failure to introduce his records by claiming that the records were lost by the Internal Revenue Service during audit. Section 1.274-5(c) (5) of the Income Tax Regs. offers taxpayers whose records have been lost due to circumstances beyond their control some measure of relief by providing that: Where the taxpayer establishes that the failure to produce adequate records is due to the loss of such records through circumstances beyond the taxpayer's control, such as destruction by fire, flood, earthquake, or other casualty, the taxpayer shall have a right to substantiate a deduction by reasonable reconstruction of his expenditures. The loss of a taxpayer's records *90 by the Internal Revenue Service would surely constitute a circumstance beyond his control. Respondent takes the position that petitioner must first establish the requisite maintenance of "adequate records" in order to be entitled to the relief provided by the regulation and that he has failed to prove the existence of a diary or account book as required by section 1.274-5(c)(2) of the Income Tax Regs. Respondent states that petitioner's testimony as to the existence of a "Dartnell red diary" is vague and inconsistent, at best. Though the record is not without doubt, we conclude that the evidence is sufficient to warrant a finding that petitioner maintained "adequate records" so as to comply with the substantiation requirements of section 274(d) and the accompanying regulations, and that respondent lost these records. We further conclude that petitioner has satisfactorily reconstructed his records so as to be entitled to the full amount of the deduction claimed, except as to the parking tickets and flight insurance which are not deductible as a matter of law and the amount claimed for secretarial work which was overstated. The fact that the yellow work *91 sheet was produced after a search had been made for the alleged lost records convinces us that the Internal Revenue Service must have lost petitioner's records. Furthermore, the fact that the figures on the work sheet correspond with the amounts on petitioners' income tax return is strong evidence that the claimed deductions were substantiated by supporting documents. Issue 2. Legal Fees and Bond Premium
Petitioner's claimed deductions for legal fees paid to the law firm of Eagleton and Nicholson and the deduction of $800 for a payment to Hartford Accident and Indemnity were disallowed by the Commissioner on the ground that petitioner had failed to establish that the expenditures were for ordinary and necessary business expenses. The Eagleton and Nicholson firm represented Maison Blanche, a department store in New Orleans, Louisiana, in the collection of a judgment from petitioner. Petitioner's testimony as to the origin of the payment for legal fees is unconvincing and we must conclude that he has failed to overcome the presumption of correctness attached to the Commissioner's determination. The $800 payment to Hartford Accident and Indemnity represented *92 a delinquent premium on a fidelity bond required under a previous employment. We are satisfied that this payment constitutes an ordinary and necessary business expense deductible under section 162. Since petitioner is a cash basis taxpayer, the fact that the premium was for a fidelity bond required under a previous employment in 1958 is immaterial. Issue 3. Dependency Exemption
Petitioner raises the dependency deduction issue for the first time on brief. Kay Wood was not claimed as a dependent of petitioner on his income tax return for the taxable year in question. However, since the question of whether Kay Wood qualifies as a dependent of petitioner is before the Court in regard to petitioner's medical expenses, respondent has no objection to the Court now also considering the dependency exemption issue. Section 151 provides a deduction of $600 for each dependent for the taxable year 1968. A dependent is defined by section 152. [5] In order to qualify as a "dependent" of a taxpayer under section 152, in addition to other requirements, *93 over half of that individual's support, for the calendar year in which the taxable year of the taxpayer begins, must have been provided by the taxpayer seeking the benefit of the dependency exemption. In order to determine whether Kay Wood received over half her support from petitioner during the calendar year 1968, the total amount of support which she received from all sources must first be determined. Petitioner has failed to provide us with any evidence to show the total amount of support provided for Kay Wood for 1968. Since total support was not shown, petitioner has failed to prove he provided over one-half of Kay Wood's total support as required by section 152(a). Bernard C. Rivers,33 T.C. 935 (1960). *94 Accordingly, we must find for respondent on this issue. Petitioners' claimed medical expense deduction for the taxable year 1968 included $9.80 for medicine and drugs and $19.50 for other medical expenses of Kay Wood. Respondent disallowed the deduction for medical expenses incurred for the benefit of Kay Wood on the ground that such amounts were not paid for a person qualifying as a "dependent." Section 213 provides a deduction for expenses paid "for medical care of the taxpayer, his spouse, and dependents (as defined in section 152)." Our finding that Kay Wood did not qualify as a "dependent" of petitioner for the taxable year 1968 thus precludes the allowance of the medical expense deductions. Issue 4. Unsubstantiated Medical Expenses
The entire $200 claimed as paid to Dr. Muengler and $105 of the $125 claimed as paid to Dr. Felton are in dispute for lack of substantiation. Section 1.213-1(h), Income Tax Regs., requires that-- Claims for deductions *95 must be substantiated, when requested by the district director, by a statement or itemized invoice from the individual or entity to which payment for medical expenses was made showing the nature of the service rendered, and to or for whom rendered; * * *. We conclude that petitioner's inability to substantiate the deductions claimed by a statement or itemized invoice is due to the loss of his records by the Internal Revenue Service. We are convinced that petitioner incurred medical expenses and the amounts claimed do not appear to be unreasonable. They are, therefore, allowed. Decision will be entered under Rule 155.
Footnotes
1. All Code section references are to the Internal Revenue Code of 1954, unless otherwise noted.↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) IN GENERAL.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *.↩
3. Section 162(f)↩ provides that "no deduction shall be allowed * * * for any fine or similar penalty paid to a government for the violation of any law." 4. Section 1.262-1(b)(1), Income Tax Regs.↩, provides that premiums paid for life insurance by the insured are not deductible.
5. SEC. 152. DEPENDENT DEFINED. (a) General Definition.--For purposes of this sustitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer): * * *↩