22487

ALLIED CORPORATION, Appellant v. SOUTH CAROLINA
TAX COMMISSION, Respondent.

(341 S. E. (2d) 139)

Supreme Court

---

*Karen LeCraft Henderson,* of *Sinkler, Gibbs & Simons,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Joe L. Allen, Jr.,* and *Deputy Atty. Gen. Ray N. Stevens,* Columbia, *for respondent.*

Heard Feb. 12, 1986.

Decided Feb. 27, 1986.

CHANDLER, Justice:

Allied Corporation (Allied) brought this action to recover $215,968 of income taxes and interest paid under protest to the South Carolina Tax Commission (Tax Commission). The tax in dispute resulted from the Tax Commission's disallowance of certain deductions claimed by Allied for tax years 1977, 1978 and 1979.

The Circuit Court concurred with the Tax Commission's ruling.

We affirm.

## FACTS

Allied is a multistate corporation dealing in the manufacture and sale of chemicals and synthetic fibers. For the years in dispute, 1977, 1978 and 1979, it was also engaged in the exploration and production of oil and gas. The principal

business of Allied in South Carolina is the manufacture and sale of synthetic fibers. It had no oil or gas wells in South Carolina during 1977, 1978 or 1979, nor were any expenditures made developing any wells in this state.

In computing and filing its South Carolina income tax returns for each of the years in dispute, Allied deducted, as an *expense*, the intangible drilling costs incurred in drilling oil and gas wells. These costs are the amounts paid for professional services, rental of business property, fuel and transportation costs, and cost of surveying and drill site preparation. Upon audit, the expense deductions were disallowed. Instead, Allied was required to *capitalize* the drilling costs as expenditures for making betterments to real property, i.e., oil and gas wells.

The Tax Commission allowed a depreciation deduction to Allied based upon a ten year life. In short, rather than allowing a total deduction of intangible drilling costs in one year, the Tax Commission allows the deduction over the ten year life of the assets.

## ISSUES

I. Are the expenditures deductible, either as (1) ordinary and necessary business expenses, or (2) as a deduction for depletion?

II. If no deduction is allowable, does the disallowance violate (1) Allied's rights to equal protection or (2) the Interstate Commerce Clause of the United States Constitution?

## I. DEDUCTIBILITY OF INTANGIBLE DRILLING COSTS

It is settled that a deduction is not a matter of right but is one of legislative grace. *See, e.g., Adams v. Burts*, 245 S. C. 339, 140 S. E. (2d) 586 (1965); *Fennell v. South Carolina Tax Comm'n.*, 233 S. C. 43, 103 S. E. (2d) 424 (1958). To obtain a deduction, the taxpayer must bring himself squarely within the terms of the statute expressly authorizing the deduction. *Avco Corp. v. Wasson*, 267 S. C. 581, 230 S. E. (2d) 614 (1976). Against this framework, two statutes for obtaining the deduction are relied upon by Al-

lied: S. C. Code Ann. §§ 12-7-700(1) and 12-7-700(8) (1976 and Cum. Supp. 1984).[1]

A. *Section 12-7-700(1)*

Section 12-7-700(1) provides a deduction for:

> All the ordinary and necessary expenses paid or accrued ... during the income year in carrying on any trade or business ...

It is undisputed that, during the income tax years here involved, Allied expended millions of dollars developing oil and gas wells, and that such expenditures were incurred and necessary in carrying on its business. However, this does not entitle the taxpayer to a deduction under § 12-7-700(1). The payments must be "ordinary" and must be an "expense" within the meaning of the statute.

While South Carolina decisions have not addressed the meaning of "ordinary" or "expense" as contained in § 12-7-700(1), the virtually identical language of 26 U.S.C. § 162, Internal Revenue Code, 1954, as amended, has been construed. Judicial construction of identical language by other jurisdictions is entitled to great weight. *Flemon v. Dickert-Keowee, Inc.*, 259 S. C. 99, 101, 190 S. E. (2d) 751, 752 (1972).

While "ordinary" has the connotation of *normal, usual,* or *customary [see Deputy v. duPont,* 308 U. S. 488, 495, 60 S. Ct. 363, 367, 84 L. Ed. 416, 422 (1940) ], this does not mean that all normal, usual or customary expenditures are deductible. The Federal Courts, including the United States Supreme Court, have held that "ordinary," in the context of deductible expenditures, is meant to differentiate between expenditures currently deductible and those which must be capitalized and amortized over the life of the asset.

> The principal function of the term 'ordinary' in § 162 is to clarify the distinction, often difficult, between those expenses that are currently deductible and those that are in the nature of capital expenditures which, if de-

---

[1] S. C. Code Ann. § 12-7-700 (1976) was repealed in May, 1985, by 1985 Act No. 101, § 22. It was, however, in effect at all relevant times in this litigation.

ductible at all, must be amortized over the useful life of the asset.

*Commissioner of Internal Revenue v. Tellier*, 383 U. S. 687, 689-690, 86 S. Ct. 1118, 1120, 16 L. Ed. (2d) 185 (1966). *See also Southland Royalty Co. v. United States*, 582 F. (2d) 604 (Ct. Cl. 1978), *cert. denied* 441 U. S. 905, 99 S. Ct. 1991, 60 L. Ed. (2d) 373 (1979).

Similarly, the requirement that the expenditure be an "expense" relates to the concept of a "capital" expenditure. The United States Supreme Court in *Commissioner v. Lincoln Savings and Loan Association*, 403 U. S. 345, 91 S. Ct. 1893, 29 L. Ed. (2d) 519 (1971), identified the element of "expense" as a requirement for a current deduction and held as follows:

> What is important and controlling, we feel, is that the ... payment serves to create or enhance for Lincoln what is essentially a separate and distinct additional asset and that, as an inevitable consequence, the payment is capital in nature and not an expense, deductible under § 162(a) ...

403 U. S. at 354, 91 S. Ct. at 1899, 29 L. Ed. (2d) at 526

Thus, the requirements of "ordinary" and "expense" within § 12-7-700(1) are not satisfied if the expenditure serves to "create or enhance ... essentially a separate and distinct additional asset" since such expenditure "is capital in nature."

Here, the expenditures create additional assets. They were incurred in drilling wells prior to production of the oil and gas. It is undisputed that the purpose of the expenditures was to create oil or gas producing wells as assets of Allied. Obviously, such wells were to produce income for Allied upon their becoming productive. Because the expenditures were made to produce a separate asset, no deduction is allowable under § 12-7-700(1).

A further ground for denying a deduction under § 12-7-700(1) is found in S. C. Code Ann. § 12-7-760(2) (1976 and Cum. Supp. 1984),[2] which states:

---

[2] S. C. Code Ann. § 12-7-760 (1976) was repealed in May, 1985, by Act No. 101, § 22. It was, however, in effect at all relevant times in this litigation.

In computing net income no deduction shall in any case be allowed in respect of:

\* \* \* \* \* \*

(2) Any amounts paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate.

We find the expenditure in question to be a "betterment made to increase the value of ... property." In deciding the precise question presented here, the United States Fifth Circuit Court of Appeals stated

It seems to us clear that a producing well is a permanent improvement. It costs more in many cases than the land in which it is constructed, and multiplies many times the value of the oil it reaches. It is permanent, because not intended to be removed, and indeed incapable of removal as a whole. It is not temporary, though its useful life is limited. Many buildings put up for special purposes have a useful life less than their physical life. That fact only increases the proper rate of annual depreciation or depletion.

*F.H.E. Oil Co. v. Commissioner of Internal Revenue,* 147 F. (2d) 1002, 1005, *reh'g denied* 149 F. (2d) 238, *reh'g denied,* 150 F. (2d) 857 (5th Cir. 1945).

Having determined the intangible drilling costs to be capital expenditures, the Court in *F.H.E. Oil Co.* denied an expense deduction.

B. *Section 12-7-700(8)*

Allied argues three grounds for a deduction under § 12-7-700(8).

First, it contends that § 12-7-700(8) allows an expense deduction for "the cost of development not otherwise deducted." Such a view misreads the statute which, in part, provides:

(8) A reasonable allowance for the depreciation and obsolescence of property used in the trade or business or held for investment and, in the case of mines and other natural deposits, a reasonable allowance for depletion,

the basis for computing such allowances to be the same as the basis upon acquisition for determining gain or loss plus the cost of any additions and improvements since acquisition, including, in the case of mines and other natural deposits, the cost of development not otherwise deducted, less retirements or recoveries of cost, ...

Allied reads the above section to mean:

A reasonable allowance ..., in the case of mines and other natural deposits, ... for depletion, ... including, in the case of mines and other natural deposits, the cost of development not otherwise deducted ...

Such a reading omits the critical language in the statute which explains "the basis for computing the allowances ..." This language sets out the method for determining the cost against which the depletion is to be allowed.

In short, the statute first states that a depletion deduction is allowed. Next, it states that the allowance is computed by combining three elements. Element one is the basis or cost of acquiring the oil well. Element two (added to element one) is the costs of "any additions and improvements since acquisition." The statute then provides that these additions and improvements include "the cost of development not otherwise deducted." Finally, element three requires that the sum of elements one and two be reduced by "retirements, or recoveries of cost." The three elements, combined, constitute the cost basis against which the depletion allowance is charged. When the cost basis is fully recovered, no additional depletion is allowed.

Second, Allied contends that the phrase "costs of development not otherwise deducted" means that a taxpayer may elect to deduct the development expenditures and, further, that any expenditures not deducted are part of the cost basis. We disagree.

A deduction election under § 12-7-700(8) would create a conflict with S. C. Code Ann. § 12-7-760(2) (1976 and Cum. Supp. 1984),[3] which denies a deduction for capital expendi-

---

[3] See Note 2, *supra.*

tures. As discussed above, the expenditures in dispute here are capital expenditures. Since both § 12-7-760(2) and § 12-7-700(8) were enacted together as § 14(b) and § 13(8), respectively, of the Income Tax Act of 1926, they should be construed together to harmonize them. *See State ex rel. South Carolina Tax Comm'n v. Brown,* 154 S. C. 55, 151 S. E. 218 (1930). In construing them together, we find the General Assembly intended to disallow an election to deduct under § 12-7-700(8).

Allied's third ground for a deduction under § 12-7-700(8) is based upon a contention that South Carolina has adopted a portion of the Internal Revenue Code specifically allowing the deduction in question. Again, we disagree.

Section 12-7-700(8) provides in part:

... Provided, that *notwithstanding any other provisions of* this section, the amount allowed as a deduction for depletion in the case of mines, oil and gas wells and other natural deposits located in the State of South Carolina shall be the same depletion as now allowed under Federal Internal Revenue Code, §§ 611, 612 and 613 *and applicable regulations* ... [Emphasis supplied].

From this language, Allied concludes that South Carolina has adopted that portion of the Internal Revenue Code which allows a deduction for intangible drilling costs. However, §§ 611, 612 and 613 of the Internal Revenue Code, adopted by South Carolina relative to depletion, do not allow a current expense deduction; § 611 allows a deduction for depletion; § 612 provides that the deduction is based upon the cost of the oil well; § 613 allows the depletion deduction to be based upon a flat percentage of gross income from the oil well.

Section 263(c) of the Internal Revenue Code allows intangible drilling costs to be "expensed." This section has not been adopted by the General Assembly and is thus not South Carolina law. Had the General Assembly intended that an expense deduction for intangible drilling costs be allowed, it could easily have adopted Internal Revenue Code § 263(c). The fact that it made no reference to § 263(c) indicates an intent not to allow such a deduction.

Further, South Carolina has not adopted Internal Revenue Regulation 1.612-4. This Regulation, which provides that

intangible drilling costs may be expensed, is not South Carolina law. Under § 12-7-700(8) taxpayers only receive the "same depletion" as allowed under §§ 611, 612 and 613 and applicable regulations. Regulation 1.612-4 is not addressed to depletion deductions but, rather, to the capitalization or expensing of an expenditure. Accordingly, it is not an "applicable regulation."

## II. EQUAL PROTECTION AND INTERSTATE COMMERCE

Allied contends that the denial to it of a deduction for intangible drilling costs is discriminatory and thus violates (1) its rights to equal protection and (2) the Interstate Commerce Clause. We find no such violations.

Allied's equal protection and Commerce Clause arguments are based on a premise that South Carolina law provides a current expense deduction for the intangible drilling costs of in-state oil wells. However, testimony showed that the Tax Commission, although it did not know of any oil or gas developments in our State, interpreted the statute to disallow the deduction as to *any* well, whether in or out of this State.

There is no discrimination in fact and the statute does not discriminate on its face; § 12-7-700(8) does not grant a deduction as to either in-state or out-of-state wells.

Allied's equal protection argument is without merit. There is no showing of actual or potential discrimination. Similarly, when there is no direct commercial advantage to local business, there is no violation of the Commerce Clause. *Northwestern States Cement Co. v. Minnesota*, 358 U. S. 450, 79 S. Ct. 357, 3 L. Ed. (2d) 421 (1959).

## III. CONCLUSION

Based upon the foregoing, we hold that the intangible drilling costs are not deductible under either § 12-7-700 (1) or § 12-7-700(8). Rather, such expenditures are capitalized under § 12-7-760(2) with depreciation allowed over a ten year recovery period.

Affirmed.

NESS, C. J., and GREGORY, HARWELL and FINNEY, JJ., concur.