J. MARK KENT and JANICE M. KENT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kent v. Commissioner
Docket No. 2361-83.
United States Tax Court
T.C. Memo 1986-324; 1986 Tax Ct. Memo LEXIS 283; 51 T.C.M. (CCH) 1605; T.C.M. (RIA) 86324; July 29, 1986. *283 Held: Petitioner's attorney's fees, paid for him by persons unknown, is the only unreported income taxable to petitioner as a result of marijuana smuggling operation. Held further, petitioner's attorney's fees are deductible as expenses which arose in connection with an income-producing activity. Sidney Soltz, for the petitioners. Theresa E. Mitchell, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency in the Federal income tax liability of petitioners for the calendar year 1980 in the amount of $301,530 and an addition to tax under *284 section 6653(b) [1] in the amount of $150,765. The deficiency is based upon respondent's contention that petitioner J. Mark Kent (Kent) received unreported income during the year in the amount of $616,740 from marijuana importation. In addition to this alleged unreported income, the issues include whether Mrs. Kent is an innocent spouse and whether Kent must include in his 1980 income the amount of $9,072.58 paid by person or persons unknown on account of his legal fees. This last issue was raised by respondent in his amended answer. [2] As to the increased deficiency, as well as the fraud addition to tax, respondent bears the burden of proof. The issues are largely factual. Respondent has also conceded a portion of the unreported income included in the statutory notice. For convenience, our Findings and Fact and Opinion are combined. *285 Some of the facts have been stipulated and they are so found. At the time of the filing of the petition in this case, petitioners were residents of Titusville, Florida. Kent, at the time of trial, was 56 years old. He is a high school graduate with a few college courses. His major employment prior to 1980 had been at Cape Canaveral, Florida where he had worked as a quality control engineer on the space program for 10 at 12 years. Petitioners have been married for a number of years. In about 1960 Mrs. Kent had a nervous breakdown and since that time she has been under treatment for her emotional condition with continuing medication which prevents her from driving. There is no evidence that Mrs. Kent participated in any fashion in the circumstances leading up to and following the arrest of Kent for possession of marijuana in 1980 or that she knew anything about it until he telephoned her that he was under arrest. Petitioners have lived modestly, with Kent being the sole support for the household. From time to time Kent has owned fishing boats and has operated as a charter boat captain. In October or November 1979, pursuant to an advertisement placed by Kent in the Wall Street *286 Journal, an individual who identified himself to Kent only as J. Edward (Butch) Johnson (Johnson) requested that Kent undertake to locate a boat suitable for charter boat fishing in the Virgin Islands with Kent to be the captain. Through a Fort Lauderdale yacht broker, Kent located a boat on the West Coast of Florida at Clearwater. After several telephone conversations with Johnson at a Miami, Florida, telephone number and also with an individual identified only as Mike, and after the boat had satisfactorily passed a survey, Kent was authorized to consummate the purchase. Kent had originally been authorized to look for a boat costing approximately $100,000; the boat was actually purchased in December 1979 for $115,140. The down payment in the amount of $10,000 was tendered by the yacht broker who handled the sale to the owner of the boat or perhaps used in whole or in part to pay the brokerage commission on the sale. [3] The balance of the purchase price was paid in the form of a cashier's check issued by Community Bank, Los Angeles, California, for the account of J. Edward Johnson. There is no evidence as to who arranged for the issuance of the cashier's check or how it was transmitted *287 from California to the seller of the yacht in Clearwater, Florida. Kent testified that he had no recollection of how the down payment was paid or who made arrangements for the cashier's check. He further denied furnishing any part of the purchase price himself and we accept his testimony in this respect. On the day before Christmas 1979, Kent moved the yacht from Clearwater to Fort Lauderdale, Florida, to a yard where the yacht was painted and refurbished. It was then moved to a rented slip behind a house apparently on the intracoastal waterway at or near Fort Lauderdale. While the boat was at the yard being painted and refurbished, and thereafter while at the slip, Mike was on the boat several times. Until some time in February 1980, Kent continued his job at Cape Canaveral, doing the work on the boat on the weekends. All the expenses for the boat were paid by Mike, but no compensation was paid to Kent for his work in acquiring the boat and making it ready for use. At some point in February, Kent was informed *288 by Mike that the boat was not to be used for charter purposes but was to be used to smuggle marijuana into the country. Kent was informed that he would be paid $10,000 for operating the boat on a trip to obtain the marijuana. If arrested, Kent was to be furnished counsel. On March 6, 1980, Mike delivered $5,000 in cash to Kent to be used for emergencies such as to bribe his way out of an arrest or confiscation and, if not so used, to be the initial installment of his compensation. Two other individuals joined Kent on the boat as crew, Joseph Hessman and John Studer. That afternoon Kent took the boat with his two new crewmen offshore to make contact with the ship which brought the marijuana to the unloading point. After being loaded with approximately 5,000 pounds of marijuana, Kent, in accordance with his instructions, stayed off shore until the afternoon of the next day, March 7, 1980. On the way back into port and on the Coral Gables waterway Kent was stopped and boarded by a U.S. Customs Service patrol. Upon finding the marijuana, Kent and his two crewmen were arrested and the boat, all the marijuana, and the $5,000 expense money in Kent's possession were seized. All three *289 individuals were tried for their part in a conspiracy to smuggle marijuana into the country. As the captain of the boat, Kent was in actual possession of both the boat and the marijuana; he was convicted.The two crewmen were acquitted. Kent had in his possession when arrested a small bag with about $100 worth of marijuana which the parties have stipulated belonged to him. The parties have also stipulated that Kent was in possession of the boat and the marijuana. Disputed is whether both the boat and the marijuana were purchased by Kent with his own funds.The statutory notice assumes that the funds used for these purposes, (including the $5,000 in Kent's possession) were acquired by Kent in 1980, presumably from some illegal source such as marijuana smuggling. However, since the boat was purchased and paid for in 1979, respondent has conceded that the alleged unreported 1980 income should be reduced by the sum of $115,140. Shortly after his arrest a lawyer from Boston, Richard Gargiulo, visited Kent at the Dade County jail, informing him that he (Gargiulo) had been employed to represent Kent. Gargiulo was paid $20,000 for the representation, $9,072.58 of which was received during *290 1980, and the balance in 1981. Gargiulo testified that Kent did not employ him but, on the grounds of the Fifth Amendment, declined to state who did employ and pay him. Neither Kent nor Mrs. Kent paid any part of Gargiulo's fee. Both Hessman and Studer were called as witnesses, but both declined to testify as to any matters relating to their presence on the boat or their acquaintanceship with Kent on the grounds of the Fifth Amendment. [4]
*291 Respondent's case is predicated on the fact that 4,966 pounds of average-quality marijuana, with a value of $75 per pound, together with $5,000 in cash were in Kent's possession and constitute unreported income because Kent has no known source therefor. Petitioner denies that he provided funds for the purchase of the marijuana or the boat. Respondent's case is supported only by the fact of the possession, evidence that the agreed upon fee of $10,000 was unreasonably low, and the presumption in respondent's favor. Respondent, in our judgment, has selected the wrong individual to tax. On the whole, we find Kent to be a credible witness. While we believe that Kent should have, and in fact may have, suspected prior to the conversation with Mike in February 1980, that the mission of the boat was smuggling rather than charter fishing, we are convinced that Kent did not supply the money for the boat, was not in contact with the smugglers who were responsible for the off-shore rendezvous, did not pay for the boat or the marijuana, and did not supply the two crewmen. Kent's story is logical and consistent with his background. There is not a shadow of a fact which places Kent in the *292 smuggling business prior to this one episode or in any other criminal activity. No possible source for $600,000 in accumulated income has been suggested. And we doubt, based upon our observation of Kent in the courtroom and on the witness stand, that he has the ability to have made the smuggling arrangements. There is no credible evidence before us to support respondent's theory; it is all to the contrary. The speculation that $10,000 was an unreasonably low fee for Kent's services as boat captain is simply speculation. The only unreported income derived by Kent in 1980 is the attorney's fee of $9,072.58. This sum is taxable to Kent in that year. We conclude, however, that this sum is deductible under section 212. Litigation expenses incurred in the defense of criminal charges are deductible when the expenses arise in connection with a taxpayer's income-producing activity whether or not the activity rises to the level of a trade or business. Commissioner v. Tellier,383 U.S. 687 (1966); Johnson v. Commissioner,72 T.C. 340 (1979). We find this case indistinguishable from Johnson where we held that the taxpayer's husband's legal expenses *293 stemmed directly from his attempt to obtain income illegally. Johnson v. Commissioner,supra at 348. In the instant case, petitioner was employed to operate a boat used to smuggle marijuana into the country.Petitioner was to be paid $10,000 for his involvement in the marijuana smuggling operation. As a result of his operation of the boat, petitioner was arrested and charged with criminal offenses. While petitioner may not have been in the business of smuggling, he was engaged in an activity entered into for profit. His legal expenses arose as a direct result of that activity. [5] Thus, following our holding in Johnson, petitioner's legal expenses are appropriately deductible under section 212. [6]
*294 With respect to the addition to tax for fraud under section 6653(b), there is no deficiency in income tax and hence nothing to which this addition could apply. Similarly, because we find that the only unreported income for the year 1980 is subject to a corresponding deduction, we do not need to address Mrs. Kent's innocent-spouse arguments. Decision will be entered for petitioner.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. ↩
2. On April 23, 1986, petitioner filed a Motion for Reconsideration of our original opinion in this case, which was filed April 10, 1986. ( Kent v. Commissioner,T.C. Memo. 1986-139↩.) Petitioner raised for the first time the issue of the deductibility of the legal fees in question as an expense incurred in connection with an income-producing activity. By Order dated July 9, 1986, we granted petitioner's Motion, and withdrew our original opinion in order to address the issue of the deductibility of petitioner's attorney's fees.
3. The yacht broker, a Captain Allen, was not called as a witness. Whether or not he could have added useful facts as to his contact with Johnson is not known.↩
4. A minor legal issue arises out of the refusal to testify by these three witnesses -- whether or not any inference for or against Kent can be made as a result of that refusal. Both parties concluded that drawing any inference from this circumstance would impinge on the constitutional protection against self incrimination. Therefore, for purposes of this case, we ignore the fact that these important witnesses declined to provide vital information to the Court.Neither counsel referred to the case of Baxter v. Palmigiano,425 U.S. 308 (1976), which suggests that, in appropriate circumstances, the fact finder may take into consideration a party's assertion of the Fifth Amendment privilege. The ramifications of that case are unclear. For these reasons, we accept the position of the parties. See 64 Marquette Law Review 243, 256↩ et seq. (1980), "Daskal, Assertion of the Constitutional Privilege Against Self-Incrimination in Federal Civil Litigation: Rights and Remedies."
5. Because we hold that petitioner's expenses are deductible under section 212, we need not address respondent's argument that the legal fees were a personal expense even if petitioner's conviction was potentially detrimental to his business activities as a charter boat captain. ↩
6. Without commenting on its applicability to this case, we note that section 280E provides that, with respect to amounts paid or incurred after September 3, 1982 [in tax years ending after such date], no deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances which is prohibited by Federal law or the law of any state in which such trade or business is conducted.↩